Chief Justice Marshall
delivered the opinion of the Court.
In 1823, John Hunt recovered against Benjamin F., and Samuel Dupuy, a judgment for $458, with interest and costs, an execution on which was shortly after-wards returned “no property found.”
In 1845, Hunt having previously died, his administrator revived the judgment, and caused an execution to be levied on devers slaves as the property of Samuel Dupuy. These slaves having been claimed by Philip Johnson as trustee of Mrs, Dupuy, (the -wife of said Samuel,) and her children, a jury found that they were not subject to the execution, which was consequently returned “no property,” &c. Whereupon, Hunt’s administrator filed this bill, for the purpose of subjecting said slaves to the judgment. The bill alleges in substance that Johnson claims the slaves as trustee of Mrs. Dupuy and her children, under a pretended deed of trust from Samuel Dupuy, which in fact never existed, and which if ever made was fraudulent and void, as Dupuy was hopelessly insolvent. It further alleges that Dupuy had mortgaged the slaves many years since to one Allen, but the mortgage debt had been long paid, and that Dupuy had remained in possession of the slaves ever since the date of the mortgage in 1842, and Allen had no claim under it. Johnson, Allen, and the Dupuys are made defendants, and the prayer is, that the slaves be subjected to the judgment, and for general relief.
Samuel Dupuy and wife, and their children, set up in their answers the following facts, which are substantially supported by the evidence — that Mrs. Dupuy had *283 by devise from her father a considerable property, consisting in lots in the town of Shelbyville Kentucky, and. a valuable tract of land in Ohio, that in 1822, her husband being greatly indebted, mortgaged to his creditors or his sureties, her. lots in Shelbyville, together with other property, and in consideration of her uniting with him in the mortgage, and under a previous agreement to that effect, he united with her in a deed conveying to Johnson as trustee for the sole use of herself, and for the education and maintenance of her children under her direction, her tract of land in Ohio, together with notes for about $400, due for the sale of a part of it, with power to sell the same, and re-invest the proceeds under her direction — that the land was from time to time sold, as provided for in the- deed. And that in the year 1826, an execution from the Federal Court against Samuel Dupuy, having been levied on his equity of redemption in the slaves and other property contained in the mortgage to Allen, the same wras purchased for and transferred to Johnson as trustee, &c., who under directions from Mrs. Dupuy that he should appropriate the trust fund in his hands to the purchase of the slaves,included in said mortgage, made various advances of money to the creditor secured by said mortgage, taking receipts therefor as trustee, &c. And that these advances from the proceeds of her Ohio land, together with other sums paid in aid of the trust by the daughters of S. Dupuy and wife, from the proceeds of a school taught by the daughters, paid more than the-value of the slaves in the mortgage.
Answer & claim of Mrs. Dupuy & children.
A trustee purchased property Under execution' which was covered by mortgage' for the benefit of the cestui' que’ trusts, who pay offthe mortgage: Held that tho gh the title be not conveyed, the’ mortgagee holds for them.
It appears however, that the mortgage title to the slaves was never conveyed to Johnson the trustee, nor was otherwise transferred or released by Allen, the’ mortgagee. Although he admits that the mortgage has been satisfied, and to agreat extent by themeans above referred to. If the mortgage debt had been paid by Dupuy himself, the title might have resulted to him- by operation of law, or if not, it would have been held in trust for him, and would in either case have been liable *284 for his debts. But as the payment was made to a con> siderable extent by, and for the trustee, or cestui que trust, and not for S. Dupuy, the mortgagor, the title to that extent at least remains in the mortgagee for the benefit and security of the trustee and beneficiaries, who by their payments are invested with the equitable rights of the mortgagee. They say they had supposed that the proper conveyances had been made to protect their interests, and that under this impression they had remained in the continued and undisturbed possession of the property. And although S. Dupuy as the head of the family had the principal control and management of the slaves and other estate, the fact that for nearly twenty years there seems to have been no attempt to subject it to the payment of his debts, tends strongly to show that, it was generally understood, or supposed to be the property of others, and not liable for hrs debts.
As the mortgage debt was not paid by or for Dupuy, but by others for their own use, and as the legal title which was duly recorded, remained in the mortgagee to answer the equities in favor of the trustee and beneficiaries, they must he entitled at least to the same benefit from the mortgage as he would be entitled to, if ■ he were still the creditor or surety of S. Dupuy, for so much of the original debt as has been paid to him by them. And as the recorded mortgage would, so long as the subsistence of his demand could be proved, have secured to him a precedence over general creditors, notwithstanding the continued possession of the mortgagor, unless it were shown to have been kept on foot for a fraudulent purpose, so must it equally secure a precedence to those who are substituted to his rights, 'even though the possession should be deemed to have continued in S. Dupuy alone. But no fraud is alleged or proved, either in the mortgagor or the mortgagee. And as the money was paid for the purchase of the slaves for the sole use of Mrs. Dupuy and her children, a possession corresponding with the intent of the pur *285 chase, cannot in itself be regarded as a fraud on their part, or on that of the mortgagor, who as the head of the family, liad the active management and ostensible possession of the slaves. Hiere is no evidence that he ever claimed property in them after the purchase of the equity of redemption, or that any one was deceived, or injured by his apparent possession. But the contrary is to be inferred. And the only fault seems to have been in the failure of the trustee to take and record a transfer of the title to himself evidencing the trust. If this had been done, the possession remaining with the beneficiaries, though apparently under the control of S Dupuy, and in part for his benefit, would have 'furnished no evidence of fraud. But the recorded mqrtgage showed that the title was not in S. Dupuy; and the facts as now proved and as probabty well understood at the time, and by the deceased plaintiff in the judgment now set up, remove any unfavorable inference that might arise from the state of the possession. At most then, the complainant as a judgment creditor could only be entitled to have an account of the claims of the trustee and beneficiaries upon the mortgaged slaves, and to redeem the slaves bypaying their claim, or to'subject them' to his demand after their claim is first satisfied. But is he entitled even to this much under the present bill, and under the facts of this case? He does not pray for .a foreclosure of the mortgage, nor for an account. Nor does he impugn the claim set up by the defendants, by any allegation adapted to the case as presented by them. He rests his case upon the prayer for general relief, and upon the allegations that the mortgage to Alien is satisfied, and that Johnson claims under a pretended deed of trust which never existed, or-which if ever executed, was void.
A wife agreed in consideration oi a conveyance by her husband of his interest ia her lands in Ohio to a trustee for the benefit of herself and ehilthen, to unite in a mortgage in fee of his real estate in Kentucky:— Held that the trust was upon a good consideration and valid.
*285 We have seen that the mortgage to Allen is not satisfied so as to be extinguished. And although Johnson has no deed of trust conveying the slaves to him, they were purchased by and for him as trustee under a deed of trust, the validity of which is fully sustained by the *286 evidence. Mrs. Dupuy’s uniting-with her husband ilia mortgage in fee of her lands in Kentucky, under an agreement that her land in Ohio should be conveyed in trust for her, is a sufficient consideration to support the deed of trust. And if this were not so, it would be a fraud upon her, to take from her the proceeds of her land in Ohio, sold under the deed of herself and husband authorizing the sale for her benefit. Then it is to .be considered too, that the funds of Mrs. Dupuy and her children were appropriated not to the purchase of the mortgage or of the mortgage debt and its security, but to the purchase of the slaves themselves, after having acquired the equity of redemption in them. Under these circumstances, and after an acquiescence of nearly twenty years, during which this claim has lain dormant, it is not entitled to any peculiar favor, nor to be helped out by liberal construction. The equity of the case is clearly with the defendants. If the complainant Wanted an account and forclosure or redemption of the mortgage he should .have asked for it, or should at least have made out grounds for such relief in his pleadings. This he failed to do, and having asked for the absolute Subjection of the slaves to his debt, without respect to the mortgage, and without impeaching the claim of the defendants as actually ' presented, we think the Chancellor was not bound to direct and account and foreclosure, and that the bill was properly dismissed.'
■Gates for plaintiff; B. Monroe, Morehead Sf Reed for defendants.
Wherefore the decree is affirmed.