## LA CROSSE AND MILWAUKEE RAILROAD COM-PANY, Plaintiff in Error,

*vs.*

## WILLIAM SEEGER, Defendant in error.

### ERROR TO MILWAUKEE COUNTY COURT.

Though the charter of the La Crosse and Milwaukee Railroad Company provides for a compulsory arbitration of the value of property taken by them for the use of the company, it is competent for the company and the party or parties interested mutually to agree upon the appointment of a greater or less number of persons to appraise the value of lands so taken.

The company, having taken and appropriated lands, the value of which was assessed by persons mutually chosen by the parties, are estopped from disputing the title of their vendor, without showing an adverse or paramount title which had accrued to them.

A sale of property, though fraudulent and void, as respects the creditors of the vendor, is good as to all other persons not claiming title through, or under such creditors.

THIS was an action of assumpsit brought by Seeger, the defendant in error, against the La Crosse and Milwaukee Railroad Company, plaintiff in error, in the County Court of Milwaukee county, and tried at the December term, 1854, when the plaintiff below obtained a verdict and judgment.

The declaration contained these counts: 1st. Upon an award for the value of certain buildings and leasehold estate, in a certain lot in the city of Milwaukee taken by the defendants below for the use of the company, rendered by arbitrators mutually chosen by the parties; 2d. Upon a *quantum valebat* for the value of certain buildings and estate taken by the said company, and appropriated to their own use; and, 3d. Upon a general indebtedness on an award made by the arbitrators named, in pursuance of a submission to them, of matters in difference between the parties. The declaration contained no averment of an offer, or readiness to convey or assign the premises upon payment of the award.

The defendants pleaded the general issue; and gave notice

La Crosse and Milwaukee Railroad Company vs. Seeger.

that they would show on the trial, that the plaintiff was never the owner of the buildings or leasehold estate, and that if there was ever any pretended transfer of the same to him, it was made and taken fraudulently, and for the purpose of defrauding the creditors of one Rau, the assignor, grantor and vendor of the plaintiff, and particularly one Bertshey, a judgment creditor of the said Rau; and that such transfer was without any valuable consideration. The notice contained other matters not now material to be repeated.

On the trial in the court below the plaintiff below proved by Rau, his vendor, that on the 28th of January, 1852, he took a lease of the premises in question (lot 3 in block 40 in the second ward of the city of Milwaukee) commencing the 1st day of May, 1852, to run five and one-half years, from one McCarty, by Lapham, his agent; that there were two buildings on the lot which he owned, prior to January, 1854, one of which he occupied himself, and the other was occupied by a tenant; that on the 28th of January, 1854, he sold the buildings and assigned the lease to the plaintiff below for $600, who took possession at the date of the sale. The consideration was paid in money at or about the time of sale. The plaintiff below also proved the lease and the assignment thereof, together with a bill of sale of the buildings. By the cross-examination of the witnesses for the plaintiff it was attempted to prove that the sale of Rau to Seeger, the plaintiff, was fraudulent as to the creditors of Rau.

It further appeared in evidence that the La Crosse and Milwaukee Railroad Company required the lots, &c., mentioned in the plaintiff's declaration; that it became necessary for the company to have the lots or a right of way over them; that they entered into negotiation with the plaintiff below therefor; and that the parties, to wit, the plaintiff below and the representatives of the company, finally submitted, by voluntary agreement, to the judgment or arbitrament of four certain persons, mutually chosen, the amount of compensation to be paid by the company. Four persons participated in making the award, but with the assent of the parties, who, at the time, assented to the award made. The award was made in writing, and the agent of the company himself filled up the blanks in the printed forms prepared for that purpose.

The award so made by the arbitrators was offered in evidence, but objected to by the defendants below, mainly upon the ground, that it was not made in conformity with their charter, it having been made by *four* persons instead of *three*, and in other respects was not made in pursuance of their charter, and hence was void. The assignment of the lease and the bill of sale of the buildings were dated January 28th, 1854.

After the evidence on the part of the plaintiff was closed, the defendants moved for a nonsuit, 1. That the award as proved is not authorized by the charter of the corporation; the charter. having provided the manner of acquiring lands, no other mode of acquisition is lawful. 2. The agreement to submit, not being in writing, is void; and 3. If the parol agreement to submit is good at common law, the legal effect thereof is, that the defendants should pay only, when tender of deed or conveyance was made, and money demanded; and that these were conditions precedent to a right of action upon the award. This motion was overruled, and the defendant excepted.

The defendants then offered in evidence the record of a judgment in the Milwaukee Circuit Court for $789.47, docketed January 30th, 1854, in favor of George Papendick against Charles Rau and others, together with an execution and return thereon, by which it appeared that the said buildings had been sold thereon, as the property of Rau. This offer was objected to by the plaintiff, and the objection was sustained, and exception taken.

The defendants then renewed the offer of the record of the judgment aforesaid, the execution and return, with the further offer to prove that the sale of the buildings and lease by Rau to the plaintiff, was fraudulent and fraud as to Rau's creditors, and also that the buildings were levied upon and sold by virtue of said execution, and that the defendants acquired title to said buildings under said sale; also that the plaintiff fraudulently represented to the defendants, before the submission, that he was the owner of the buildings and lease. This offer was objected to, and rejected by the court, and the defendants excepted.

After some further evidence introduced for the purpose of impeaching the award, and the evidence being closed, the defendants requested the court to charge the jury:

1. That they find for the defendants.

2. If the first instruction is refused, then, that if the jury find from the evidence, that the defendants did not agree with the plaintiff that the four persons who have signed what purports to be an award, should make a binding award, but only should state what they considered the value of the houses and lease-hold estate, as a basis upon which the parties might afterwards negotiate, then they should find for the defendant.

These specific instructions were refused, and the court then instructed the jury:

"That this was an action upon an award; that they must find from the evidence, that there was a mutual submission by the parties to the arbitrators; that such submission might be in writing, or by parol; and that there was an award made upon such submission, otherwise the plaintiff could not recover. In order to ascertain whether there was a submission, the jury might look at the facts and circumstances as proved, and though there was no express agreement to submit proven, yet they might infer such agreement to submit from the acts of the parties. A submission may be made out by circumstantial evidence, and it is for the jury to say, from all the facts in evidence, whether or not there was a mutual submission of the matter in controversy. The acts of the parties may of themselves operate as a submission. If the jury find there was a submission, then the next question is, was there any award made, and what was the amount of the award?

"The court refused to charge as requested by defendant's counsel, but charged that the plaintiff could not recover unless the jury found a mutual agreement on the part of both parties to submit the matter in question to the four arbitrators.

"To all and to each and every part of which charge and instructions, and especially to the refusal of said court to charge as requested by the said defendant, the said defendant did then and there except."

Under the aforesaid charge the jury gave verdict for the plaintiff for the amount of the award and interest, upon which judgment was rendered.

*J. Stark*, for the plaintiff in error.

*H. L. Palmer*, for the defendant in error.

*By the Court*, SMITH J.   We are unable to discover any material error in the proceedings of the court below, either in the instructions given to the jury, or refused to be given.

The question was fairly submitted to the jury, whether or not there was a mutual submission of the matters in controversy between the parties, to arbitrators; and whether an award was made.   The jury have passed upon all the evidence, and have found, and in our opinion rightly, that there was a mutual submission and award, together with the further fact, that the defendant below actually took the property and appropriated it to the use of the company, and it would be extremely unjust to permit the company now to repudiate their own acts, after inducing the plaintiff below to adopt his conduct accordingly. And the purposes of justice would be equally thwarted if the company were permitted, after having assented to the submission and the award, furnished its form, taken a copy and appropriated the property thereon, to refuse payment on the ground that the award was made by four persons instead of three only. They cannot hold the avails of the award on their part, and refuse its benefits to the other party.

We are also of the opinion that the evidence offered by the defendants below to show the sale from Rau to the plaintiff, fraudulent as against the creditors of Rau, was properly rejected.   The defendants did not claim to be creditors.   If that sale was void as against the creditors of Rau, it was void as to creditors only.   The defendants were not in a condition to question it.   It was good and valid as to all the world but the creditors of Rau.   Nor did the fact that the defendants claimed under an adverse title under the sale on the execution, render the offer any more competent.   The question of fraud could not be tried in that way; especially after the compensation had been agreed upon in the manner shown by the evidence.

Whether or not this was a submission in conformity with the charter of the company, such as to bind all parties, it is not material to inquire.   It was competent for the company and the owner of land to be taken, to agree upon the amount of compensation, and they could adopt that mode, or any other, for the

purpose of ascertaining the amount to be paid, and agree to stand to the sum so ascertained. It is not claimed that this was a compulsory submission, for which the charter provides, but a *mutual* submission, a mode mutually adopted by the company and the owner, by which they should arrive at the amount of compensation for the property to be taken by the former; and when the amount was ascertained, the contract was complete; to be enforced like all other contracts of the kind. No deed was necessary, for when the company should have tendered the amount so agreed upon, the title vested in the company by their charter. In case the plaintiff had not agreed with the company as to the compensation, and had refused to enter into a voluntary submission, the company were empowered by their charter to cause a compulsory award to be made. In the latter case, the terms of the charter would require to be strictly followed.

But the charter requires the company to agree with the owner of the land, if possible, as to the amount of compensation to be paid; and to that end, we see no reason why the company and the owner may not agree to abide by the estimate or appraisal of one, two, three or any number of men. If, however, no agreement can be made with the owner, then, and not till then, is the compulsory submission prescribed by the charter to be resorted to.

Nor is the objection that this submission was not in writing, of any validity. It was not a mode of *acquiring* land or any interest in land. The *acquisition* was a fixed fact. The company *took*, and by their charter were authorized to *take* the lands, and they were required to agree with the owner if possible as to the compensation.

The question between the parties was, not whether the plaintiff should sell and convey to the company, and if so, for what sum; but the company having taken the property by virtue of the power conferred on them by law, what compensation they should make the owner? This has nothing to do with the statute of frauds. That statute has no application to a case of this kind. The land is taken by virtue of the right of eminent domain delegated by the state to the corporate body. The mode of ascertaining the amount of compensation to be paid, may be by agreement of the parties, or by compulsory arbitrament. In neither case is it a

mode of conveyance of the land, or interest in land, and hence the statute of frauds has no application. For a like reason, no deed or assignment or transfer was necessary. Whether or not the company would take the property, did not depend upon the amount of compensation that might be agreed upon or awarded. The company took the land, and because they had entered upon and laid their road thereon, the appraisal and payment of compensation became necessary. Having thus located their road upon, and appropriated the lot in question, and agreed with the owner as to the amount of compensation to be paid him, it was not competent for the company to dispute his title on the ground that the sum was fraudulent and void as against the creditors of his vendor. They did not offer to show that they were creditors of Rau, or that they had been evicted by or through any one of such creditors, nor that the title derived through the plaintiff to them had failed, nor that they had obtained a paramount title in any mode prescribed by their charter. Until they do so, every rule of morals and of law requires that they be estopped from denying the award which they aided to procure, to which they assented, and the fruits of which they are now enjoying. The facts in the case were fully submitted to the jury, and we are unable to discover any error which would justify a disturbance of the verdict.

Judgment affirmed.