# THOMAS REYNOLDS, Plaintiff,

## *vs.*

# LEVI B. VILAS, Defendant.

8  471
78  185

### ERROR TO CIRCUIT COURT, DANE COUNTY.

On the trial in an action of ejectment, where the evidence showed that D. was in embarrassed circumstances, and after paying off a judgment he procured the same to be assigned to S., and then S. sued out an execution on the judgment and levied upon the lands embraced in the town plat of Madison, and sold the same, S. becoming the bidder, but in the meantime D. sold two lots to G. for a valuable consideration, and then G. sold to R., the plaintiff, who brought this action against V., who claimed by grant from S. R. now asked the court to instruct the jury that if the sheriff's sale to S. was without consideration, and for the benefit of D., and if the deed from D. to G.. was made in good faith and for a valuable consideration, and was duly recorded prior to the deed from S. for the same lots, then the sheriff's deed was void as to G. and his grantees ; which instruction the circuit court refused to give ; Held that the refusal of the circuit court was erroneous.

If a sale and conveyance be made by a sheriff with the actual intent to defraud prior or subsequent purchasers for a valuable consideration, the parties thereto can no more avoid the effects of the statute of frauds, by this ceremony of the sale of the sheriff, than if the deed had been given directly by the owner of the land to the grantee with the like intent to defraud.

It would seem that in England, under the statute of 27 Eliz. c., 4, the courts hold that a *voluntary* conveyance of land is fraudulent and void against a subsequent purchaser for valuable consideration, even with notice ; but in this country, the rule seems to be that a *bona fide* purchaser for valuable consideration, is protected under the statute, whether he purchased from a fraudulent grantor, or a fraudulent grantee ; and there is no difference in this respect between a deed to defraud subsequent creditors, and one to defraud subsequent purchasers. It is voidable, not absolutely void.

The consideration expressed in a deed will be taken as *prima facie* evidence of the real consideration, until the contrary appears ; but that evidence may be rebutted by parol proof showing another and different consideration, or none.

Reynolds vs. Vilas.

If D. made a fraudulent conveyance to S., as between D. and S., the deed would be deemed valid, and the courts will not interfere for D.'s benefit ; though it would in favor of D.'s grantee for a valuable consideration; so too if S. should sell the land for a valuable consideration, before D. had done so, the benefit of the statute of frauds would extend to the grantee of S., as against D. and his grantees.

Under the code it is competent in an action of ejectment, to impeach a deed for fraud, when the same shall be attempted to be used as evidence upon the trial, without any direct proceeding for that purpose as was done under the old practice, by bill in chancery.

This was an action of ejectment commenced in July, 1856 ; and on the first trial the verdict was given for the plaintiff, Reynolds. That judgment was reversed in the Supreme Court, and reported in 6 Wis. 214. On the trial of the cause the plaintiff read the patent for the lands including the lots in question from the United States to Mason and Doty; and the deed from Mason to James D. Doty; also the deed from Doty to Nathan Goodell; (this deed is given at length in the report of the case in 6 Wis. Rep. 214,) a power of attorney from Goodell and wife to Henry S. Baird, and a deed from Goodell and wife by Baird for the lots to the plaintiff. The defendant admitted the possession of the lots to be in him.

The defendant then offered in evidence the records of the judgments in Brown and Milwaukee counties, the executions and levies, sale and deed to Barlow Shackelford, as described in the former report of the case. These records and deed were accompanied by the evidence of the sheriff who made the sale, proving that it was all done under the direction of Doty. Also the deposition of Doty in relation to his giving directions to the sheriff about making the sale, and also giving his consent to the sale. On cross-examination he testified that he conveyed these lots to Goodell, and said :

" I think I did at some time ; I do not now recollect when I made a conveyance of those lots to Nathan Goodell. I think in the year 1836, I had given a Mrs. McArthur a paper

in which I agreed to give her a deed of two lots in this town if she would build upon them and occupy them; several years afterwards this paper was presented to me by Mr. Goodell, and he desired me to make this conveyance to him as he had purchased of Mrs. McArthur all her right to them; I made him a deed of those lots upon that consideration only; this is all that I recollect about it; the agreement was for two other lots, not for lots eight and nine; the consideration was never fulfilled by building or occupying the lots."

And being asked whether the sale to Shackelford was *bona fide*, or for Doty's benefit? He answered:

"I decline stating what the arrangement between Mr. Shackelford and myself was, but I state that he continued to be the owner of the property purchased at the sale, and that after his death so much of the property as remained undisposed of by him, was inventoried as his estate, and sold as such for his debts; that the amount which he bid upon the sale was a portion of those debts. I answer the question last under the decision of the justice, by saying that there was no positive agreement between Mr. Shackelford and myself, but there was an understanding between us that I was to have the benefits of the sale."

The defendant also read the deeds from Shackelford to Philip Covall, and from Covall to the defendant.

The deed from Daly to Goodell was dated the 25th of February, 1853, in consideration of ten dollars. The judgments were entered October 14th, 1841, and the lands sold the 16th of August, 1842, and the sheriff's deed is dated 17th of August, 1844, and the deed of Shackelford to Covall is dated May 19, 1845.

The plaintiff to rebut the evidence on the part of the defendant, read the deposition of Alanson Sweet, who testified in substtance :

"I obtained two judgments against Doty. One in Milwau

kee county, I think, and another in Brown county in this State. The two judgments amounted to about the sum of five thousand dollars, or over, between five and six thousand. This last judgment I believe was obtained in the year 1841, in the fall, I think. Both judgments were in the dictrict court of the territory of Wisconsin. These were the only judgments that I ever obtained against said Doty to my knowledge.

"A part of one of the judgments, probably the one in Milwaukee county, was paid by a sale of real estate, in Milwaukee, on execution. The balance of the two judgments was settled up and paid, I think, in the spring of 1842. It was paid by Doty to me partly by real estate then conveyed to me by Doty, and some money, and the residue by two promissory notes made by Doty to me, and indorsed by Barlow Shackel ford, one of which notes Doty paid; the largest note of about nine hundred dollars. I think the smallest note except a trifle, say sixty or seventy dollars, has not been paid. This last note I think, on reflection was not indorsed by Barlow Shackelford. I believe, on reflection, Mr. Doty paid some taxes for me, deducting which there might be ten or twenty dollars unpaid upon that note.

" I assigned the judgments to Barlow Shackelford, at the request of Doty, and for the reason that Doty was embarrassed, and he wanted the judgments put in that position to aid him in adjusting his affairs. He never paid anything for them.

" Mr. Doty and I arranged the matter between ourselves, and as a witness, Doty said he would call Shackelford in to close up the matter, and he (Shackelford) came in and witnessed the execution of the notes and deeds to me. The assignment to Shackelford was drawn and executed, and as we were together, I remarked to Doty that Shackelford may as well indorse the note or these notes, and Doty said he had no objection if Shackelford had not; and Shackelford said he had no objection, it was a matter of no interest to him

whatever, and what he did in the matter was to accommodate Doty, and took up a pen and indorsed one or both notes, and I left the assignment with Doty. I resided in the city of Milwaukee."

The cause having gone to the jury, the judge was then asked by the attorneys of the plaintiff to instruct the jury "that if they believed that the sheriff's sale to Shackelford was without consideration, and for Doty's benefit, and the deed from Doty to Goodell was a good and valid deed, made in good faith, and for a valuable consideration, and was duly recorded prior to any conveyance of the same lots by Shackelford to Covall, through whom the defendant claims title, then the sheriff's deed was void as to Goodell and his grantees." And, also, "that unless the jury believed from other than *parol* evidence that the requisites of the statutes existing at that time were pursued by the sheriff in making the sale set up by the defence, then they are to disregard said sheriff's deed." Which instructions were refused by the judge, and decided to be improper to be given, to which refusal the plaintiff excepted.

The counsel for the defendant asked the judge to charge the jury; "that the fact that the deed from Doty to Goodell was recorded prior to the deed from Shackelford to Covall is not sufficient to charge or affect the defendant Vilas with notice of any fraud or collusion that might have existed between Doty and Shackelford in the sheriff's sale." To the giving of which to the jury the plaintiff, by his attorneys, did object; but the judge overruled the objection, and gave said instruction to the jury. To which the plaintiff excepted.

And said judge did further charge and instruct said jury as follows: "This is an action of ejectment. The question is not, which of the parties, plaintiff or defendant, has the *best* title; but the question to be determined by you from the evi-

dence in the case, is whether or not the plaintiff has title, or had title at the commencement of this suit, to the lots described in his declaration. If the plaintiff recovers in this action he must recover upon the strength of his own title, not upon the weakness of the defendant's title. In law it amounts to this, that unless the plaintiff has shown a title, whether the defendant has a title or not, he cannot recover, and is not entitled to a verdict in this action.

"The plaintiff's claim of title as given in evidence is as follows: (read from minutes of testimony). It is conceded by the defendant that, *prima facia*, the plaintiff has shown title in himself, and unless this claim of title is impeached by the defendant, he is entitled to your verdict. Has the defendant done it? He contends that he has. You will remember that a link in the plaintiff's chain of title is a deed from James D. Doty to Martin Goodell, and that Goodell is the immediate grantor, by Baird, his attorney in fact, of Reynolds, the plaintiff, and the deed from Doty to Goodell bears date 25th February, 1843. The defendant contends that at a date anterior to this deed, and subsequent to the time that Doty acquired title to the lots in question, and on the 16th of August, 1842, Doty's title to the lots in controversy was sold by the sheriff of Dane county on a writ, or writs, of execution in favor of Alanson Sweet against Doty, that the same were never redeemed from such sale, and, therefore, Doty had no estate or title to sell at the date of his conveyance to Goodell, and consequently conveyed nothing by that deed to Goodell. If this is so, and it is for you to say, from the evidence in the case, Goodell acquired no title, did not give any title by his deed to Reynolds, the plaintiff, and the plaintiff must fail in his case.

"The plaintiff's counsel, to destroy the effect of the before-mentioned sheriff's sale upon Doty's right and power to convey the lots to Goodell, offered evidence to impeach that sale

by showing that Shackelford, the purchaser at that sale, and Doty the defendant in the judgment, &c., were in collusion, and that the sale was made, and the purchase of the property was made by Shackelford for the use and benefit of Doty, and therefrom infer that the sale was void as to the subsequent purchaser in good faith, both from Doty and Shackelford, but as it was not proposed to connect the defendant, Vilas, with the fraud, or knowledge of it, the court refused to admit evidence, (save some slight evidence in Doty's deposition), for that purpose, and I now charge you, that Vilas' right in the premises is not to be affected by any such fraud, if fraud there was, between Shackelford and Doty; but, for the purposes of this case, that sale by the sheriff to Shackelford must be treated as a valid sale, and, as a conveyance, destroyed Doty's right and power to convey title by his deed to Goodell, and unless the title of plaintiff is supplied in some other way, he is not entitled to your verdict. As to this and all the facts, you must look to the evidence. I do not assume to state what is in proof saving the record evidence, but have assumed such facts only as I understand are not disputed. The facts you are to find from the evidence, not counsel or court."

A. L. COLLINS, *Circuit Judge.*

To all of which last named charge and instruction, from the words "if this is so, and it is for you," &c., to the close, the said plaintiff did then and there, by his said attorneys and still does except.

The jury thereupon brought in a verdict in favor of the defendant upon which judgment was afterwards entered, and to reverse said judgment this writ of error is brought.

*Abbott & Clark,* for plaintiff in error.

*S. U. Pinney,* for defendant in error.

*By the Court,* COLE, J.   On the  trial of this cause  in  the
circuit court, the plaintiff  in error, who was  the  plaintiff be-
low, requested the court, among  other  things, to instruct the
jury as follows:  " That if they believed that the sheriff's sale
to Shackelford was  without consideration, and  for  Doty's
benefit, and the deed from Doty to Goodell was  a  good  and
valid deed, made in good faith and for  a  valuable considera-
tion, and was duly recorded prior to  any  conveyance of the
same lots by Shackelford to Covall, through  whom  the  de-
fendant  claims title, then  the  sheriff's  deed  was void as to
Goodell and his grantees."

This instruction was  refused and  exception duly taken.
And the main question which we propose now to consider, is,
was the instruction  right in  point of law, and proper under
the evidence in the case to be given to the jury ?   We are of
the opinion that it  was.

In  order to perceive the application of  the instruction more
clearly, it will be necessary to bear in mind some  of the facts
of the case as they appeared in the evidence or  were  offered
to be proven on the trial.   The defendant to defeat the action,
with other testimony, had  offered  in  evidence, transcripts of
certain judgments from the counties of Brown  and  Milwau-
kee, in favor of Alanson Sweet, and  against James D. Doty,
and the execution and *vend. exp.* issued  thereon, by virtue of
which  the  premises  in  controversy  had  been  sold by the
sheriff of Dane county, on  the 16th day of August, 1842, to
Barlow Shackelford, and had also offered in evidence the cer-
tificates of sale, made  and  filed by the sheriff ; and the sher-
iff's deed to the purchaser, Shackelford, which  bore  date,
August 17th, 1844.   From the plaintiff's  case it  appeared
that Doty had conveyed the premises on the 25th day of Feb-
ruary, 1843, to Goodell, through whom the plaintiff, Reynolds,
claimed title.   Further, it appears that on the trial the plaintiff

insisted and had offered to prove for the purpose of impeaching and avoiding the sheriff's deed that the judgments in favor of Sweet had been paid and satisfied prior to the sale on the execution issued thereon ; that the purchaser, Shackelford, had full notice of such payment and satisfaction; that the sale was made for the benefit of Doty, and by collusion between him and Shackelford to defraud the creditors and subsequent purchasers of Doty; and that no consideration passed at the sheriff's sale from Shackelford. All this testimony being objected to was ruled out by the court.

The real question fairly presented by the instruction and the ruling of the court in rejecting this evidence may be stated to be this: It being made to appear that the sheriff's sale to Shackelford was without consideration and for Doty's benefit, and intended by the parties to it to defraud prior or subsequent purchasers of the same premises; and that the deed from Doty to Goodell was a good and valid deed made in good faith and for a valuable consideration, and placed upon record prior to any conveyance from Shackelford, whether these facts existing or being satisfactorily established, the title derived from Goodell would prevail against a title claimed through Shackelford? The determination of this question will depend upon the operation of the statute in force at the time of the execution of these several conveyances.

The first section of title one of the act to prevent fraudulent conveyances, and contracts relative to real and personal property found in the R. S. of Ter. of Wis., page 161, reads as follows: " That every conveyance of any estate or interest in lands and every charge upon lands or upon the rents and profits thereof made or created with the intent to defraud prior or subsequent purchasers for a valuable consideration of the same lands, rents or profits, as against such purchasers shall be void." It will be noticed that this provision is a substantial transcript of the statute of 27, Eliz. c. 4, (Bac. Ab.,

Title "Fraud" C.,) which would probably have controlled the case in the absence of any special enactment, and which has received frequent construction as well in the courts in England as in the various State and federal courts in this country. It may be well to premise here that we do not suppose in view of the statute just cited, and under the circumstances of this case, there can be really any material distinction in principle between a sheriff's sale made as this was alleged to have been made for the purpose of fraud and a private sale. For it would seem if the sale and conveyance were actually made with the intent to defraud prior or subsequent purchasers for a valuable consideration of the same lands, the parties could not avoid the expressed consequences of the statute by resorting to the idle ceremony of a sheriff's sale under an execution. Assuming therefore that the condition of the case is not otherwise than it would have been, had Doty directly made the deed to Shackelford, voluntarily and with the intent to defraud subsequent purchasers for valuable consideration, how does the matter stand? Doty and Shackelford, according to the assumption, collude together to have a judicial sale, made under executions issued upon judgments paid and satisfied, with the intent thereby to defraud subsequent purchasers. Now if we had not the light which numerous cases, decided by the most eminent judges, have thrown upon this statute, or one in *pari materia,* still, by giving the language of the statute, its fair, ordinary meaning, is there room for a reasonable doubt that a conveyance, admitted to be fraudulent in its very inception, fictitious, without consideration, and for the benefit of the real grantor, and which was designed by the parties to it to defraud subsequent purchasers, must be, as against a subsequent purchaser, void? We think not. Courts in England have gone so far in their construction of the statute of 27, Eliz., as to hold that a voluntary conveyance in law was fraudulent and void against a subsequent purchaser

for valuable consideration even with notice.  *Evelyn vs. Templar*, 2 Brown, Ch. R., Eden's edition, 148; *Doe ex dem. Otley vs. Manning*, 9 East., 59.

Lord Ellenborough in *Perry vs. James*, 16 East., 212, says notice of a prior voluntary settlement cannot vary the question, for it amounts to only a notice of a settlement which was void against a subsequent purchaser for a valuable consideration.   The Master of the Rolls, in the case of *Buckle vs. Mitchell*, 18 Ves. Jr., 110, also stated, that the statute of 27 Elizabeth, had received the construction that a voluntary settlement however free from actual fraud, is by the operation of that statute deemed fraudulent and void against a subsequent purchaser for valuable consideration, even where the purchase has been made with notice of the prior voluntary settlement, " and it is settled in England," says Chancellor Kent. 4 Com., p. 514, of eighth edition, " that a voluntary conveyance, though for a meritorious purpose, will be deemed to have been made with fraudulent views, and be set aside in favor of a subsequent purchaser, for a valuable consideration, even though he had notice of the prior deed."   See also *Pulvertoft vs. Pulvertoft*, 18 Ves., 84.   But the authorities do not extend the doctrine so far in this country.   The American doctrine is that a *bona fide* purchaser for valuable consideration is protected under the statutes of 13 and 27 Elizabeth, as adopted in this country, whether he purchases from a fraudulent grantor or a fraudulent grantee; and there is no difference in this respect between a deed to defraud subsequent creditors, and one to defraud subsequent purchasers. They are voidable only and not absolutely void.   4 Kent. Com., 8th edition, p. 516; *Anderson vs. Roberts*, 3 J. C. R., 371; same case in 18 J. R., 515; *Bean vs. Smith*, 2 Mason, 251; and in the following cases, a conveyance actually fraudulent has been held to be void against a subsequent purchaser for valuable consideration, even with notice.   *Ricker vs. Ham*,

14 Mass., R. 137; *Clapp vs. Leatherbee*, 18 Pick., 131; *Clapp vs. Tirrell*, 20, id., 247; *Verplank vs. Sterry*, 12 J. R., 536; 7, B. Mon., 11; 10 Ala. R., 348; 4 McCord, 295. C. J. Marshall in *Cathcart et al. vs. Robinson*, 5 Peters, 264, states that a subsequent sale to a *bona fide* purchaser without notice is evidence that a prior voluntary conveyance was fraudulent.

From these authorities, and others to the same effect, which might be cited if necessary, it would seem to be clear and incontestible, that if the judgments in favor of Sweet were paid prior to the sheriff's sale, and Shackelford had full knowledge of the fact of such payment, and the sale was made by collusion between Doty and Shackelford for the purpose of defrauding the creditors and subsequent purchasers of Doty, that while a court would not aid Doty in setting aside this sale, and the sheriff's deed founded upon it, still it must interfere to protect a subsequent purchaser for a valuable consideration, seeking to avoid a title claimed through the sheriff's deed. What the consideration in the deed from Doty to Goodell was, does not very clearly appear from the printed case, Doty's recollection upon the point is not distinct, and he is rather inclined to the belief that the only consideration was that Goodell should build upon the lots. The deed is not in the record of the case, and we cannot therefore refer to it to satisfy ourselves upon this matter. But the counsel for the plaintiff in error on the argument stated that the deed was for a valuable and not a nominal or good consideration, and probably the consideration expressed in the deed must be taken as *prima facia* evidence of the real consideration until the contrary appears. The acknowledgment of consideration in the deed in the case of *Clapp vs. Terrell*, 20 Pick., 247, was considered as mere *prima facia* evidence which might be controlled and rebutted by parol proof; and we are disposed to adopt this rule, although other cases hold the contrary doctrine, *Rogers vs. Hall*, 4 Watts R., 359; *Kimball vs. Turner*, 12 N.H., 248.

But the instruction asked for went upon the assumption that the deed fiom Doty to Goodell was a good and valid deed, made in good faith and for a valuable consideration, and we must therefore presume that Goodell paid a real and valuable consideration for the lots.

If these views are correct it must follow that the first instruction asked for by the plaintiff in error was right in point of law, and ought to have been given to the jury.  It also follows that the circuit court erred in its general charge by holding that the defendant's right in the premises was not affected by any fraud, if fraud there was between Doty and Shackelford; but for the purposes of the case the sale by the sheriff to Shackelford must be treated as a valid sale, and as a conveyance destroyed Doty's right and power to convey title by his deed to Goodell.

It was insisted on the argument by the counsel for the defendant that since the sheriff's deed related back to the time of sale under the execution, we must hold that the defendant was a purchaser in good faith without any notice of the collusion or fraud between Doty and Shackelford, and was in possession claiming under the oldest title.   Without dwelling at any length upon this proposition we remark this difficulty.   Before the giving of the sheriff's deed to Shackelford, and before any attempt on the part of Shackelford to convey away the premises, Doty, the frudulent grantor, had conveyed the lots to Goodell for a valuable consideration. As between Doty and Shackelford the sheriffs's deed might be deemed a valid conveyance ; certainly a court would not interfere to enable Doty to avoid the deed and relieve himself from the consequences of his own misconduct.   Had Shackelford conveyed the estate to an innocent purchaser for a valuable consideration before Doty had done so, the case would be materially different; the benefit of the statute would extend to any *bona fide* purchaser for a valuable con-

sideration whether he purchased from the fraudulent grantor or the fraudulent grantee. The fraudulent grantee would take the estate of the fraudulent grantor, and the deed would be voidable at the instance of a subsequent purchaser, but not legally and strictly void. Had Covall therefore obtained his deed from Shackelford in good faith, and for a valuable consideration, before the conveyance from Doty to Goodell, he or the defendant claiming under him would have taken the title free from any defect arising from the conduct of Doty or Shackelford. But this he did not do, and he cannot for this obvious reason claim the benefit of the statute.

In the former opinion given in this case we expressed a doubt as to whether the sheriff's deed to Shackelford could be impeached in a court of law for fraud. The case did not probably call for the expression of any opinion upon that point, and we might not in this respect be sustained by the authorities. Under the old practice the usual way to set aside deeds for fraud was by filing a bill in chancery for that purpose. Whether it was or was not competent for a court of law to set aside a deed impeached for fraud we shall not stop to inquire, for it is immaterial in this case. Under the code of proceedure all distinction between equitable and legal actions is abolished and the provisions of the code must apply to the trial and subsequent proceedings in this case. Code, §, 356, sub. 2. We therefore think it very obvious that the sheriff's deed in this case might have been impeached on the trial.

The judgment of the circuit court must be reversed and a new trial ordered.