# STATE OF IOWA;

## DES MOINES, DECEMBER TERM, A. D. 1868.

IN THE TWENTY-SECOND YEAR OF THE STATE.

---

PRESENT:

Hon. JOHN F. DILLON, Chief Justice.
   "   CHESTER C. COLE,
   "   GEORGE G. WRIGHT,  } Judges.
   "   JOSEPH M. BECK,

---

STEELE, Administrator, v. WARD et al.

Fraudulent conveyance: MUTUAL PARTICIPATION IN THE FRAUD NECESSARY. To render a conveyance fraudulent, as against creditors, there must have been a mutual participation in the fraudulent intent on the part of both the grantor and grantee. The facts which were in the present case held insufficient, stated by BECK, J.

*Appeal from Monroe District Court.*

WEDNESDAY, OCTOBER 7.

PLAINTIFF brought suit in attachment, against defendant Murray, July 7, 1865, levying the writ upon 120 acres of land, which had been owned by Murray for several years. July 11, 1865, a deed executed by Murray, was filed for record, conveying the land attached, with thirty acres in addition, to defendant Ward. The deed is dated and acknowledged June 28, 1865, and the consideration named therein is $2,000. Plaintiff obtained judgment against Murray for $1,644.44, and brings this action in equity to set aside the deed, and subject the land to the lien of the judgments upon the ground, that the sale was without consideration and fraudulent, being executed for the purpose of defeating plaintiff in the collection of his debt. Plaintiff introduced the defendants as witnesses. They testified positively, that the sale was made and the deed executed upon the day of its date; that Ward actually paid Murray, at the time, $2,000 cash, for the land, and that, so far as Ward was concerned, the transaction was honest and fair. The evidence is sufficiently referred to in the opinion.

The District Court found the equities with plaintiff, and decreed in accordance with the prayer of the petition. Defendant Ward appeals.

*W. P. Hammond, Anderson & Dashiell* for the appellant.

*Perry & Townsend* for the appellee.

BECK, J. — The evidence for plaintiff, which, upon this point, is circumstantial in its character, fails to overcome

Steele v. Ward.

FRAUDULENT CONVEYANCE: mutual participation in the fraud necessary. the positive testimony of the witnesses, that the conveyance was made upon the actual consideration of $2,000, paid by Ward to Murray. It is not necessary to discuss the question whether Murray conveyed the lands with the intent to defraud his creditors. Unless Ward participated in the fraud, so far at least as to have a knowledge of the fraudulent intent of Murray, the conveyance cannot be disturbed, and plaintiff can have no relief, even should we find such fraudulent intent on the part of Murray, and that he conveyed the lands in pursuance thereof. There are many circumstances that appear to favor the view that the sale was made by Murray in order to place the lands out of the reach of his creditors. Admitting that such was his intention, did Ward participate in the fraud or have knowledge of Murray's designs?

We are utterly unable, after a careful consideration of the evidence, to answer this question affirmatively.

The plaintiff relies upon the testimony of Ward and Murray, themselves, to sustain his view of the case. They both flatly deny Ward's knowledge of Murray's designs, and that he had such knowledge cannot be fairly inferred from the evidence. It is not pretended, that there is a particle of positive evidence tending to show that Ward knew of Murray's indebtedness, or had any reason to suspect that his object in selling the land was not for an honest purpose. The circumstances relied upon to prove Ward's knowledge of Murray's designs, and that no consideration was paid, are just as consistent, and some of them more so, with Ward's ignorance of Murray's intentions, if they were fraudulent, and the payment by him of the consideration named in the deed, as they are with the supposition of the fraudulent acts, intentions and knowledge of the parties. The following are among the

circumstances relied on to establish the fraudulent character of the transaction:

1. The parties were brothers-in-law.

But they had not seen each other for about two years, and lived near a hundred miles apart. It does not appear that their acquaintance was ever very intimate.

2. Murray visited Ward for the purpose of selling the land, and actually conveyed it during the visit.

But this visit was brought about by a letter which Ward wrote to Murray, expressing his wish to buy a farm, and his desire to remove to the neighborhood where Murray lived.

3. This letter and another of the same purport were not produced in evidence, though called for, the parties stating that they were lost.

That these parties should lose such letters is not remarkable. They are plain people who do not file away their correspondence. If, as plaintiff claims, "they manufactured the evidence," they certainly omitted the least difficult part to "manufacture," namely, the preparation of the letters. Certainly, if these people are so dishonest as to give false evidence, and possess sufficient ability to make a story so consistent, they would not have omitted to produce the letters, which could have been created with less trouble than the rest of their evidence.

4. Ward does not satisfactorily account for the acquisition of the money he professes to have had at about the time of and after the purchase of the land.

He is shown by the evidence to be a prudent, industrious, hard working man, who was careful of his earnings, and prosperous in his business. By the pursuit of industry for many years, he progressed from a very poor day laborer, absolutely without means, to become a well to do farmer, who had money to loan to his neighbors. His neighbors testify, that he laid by each year, for many

Steele v. Ward.

years, several hundred dollars, which would amount to quite as much as he appears, from the evidence, to have expended about the time of the purchase of the lands. The fact has forced itself upon our attention, through years of experience, that such men as Ward is shown to be by the evidence — industrious, economical, prudent, temperate, and, as a result of these virtues and qualities, prosperous — are usually honest, and are seldom, if ever, found in the enterprise of assisting a friend to cheat his creditors.

5. Ward bought the land without ever having seen it, or without any knowledge of the condition of the title.

It is claimed, that the fact of these parties being brothers-in-law sufficiently accounts for the confidence existing between them, that would induce them to enter into the fraudulent transaction together. Is not the same fact a reason for the existence of the confidence which would induce Ward to buy the land without having seen it? But it sometimes happens in honest transactions that men will buy land they have never seen. We remember a case recently before us in which one was induced to trade his homestead to another for lands he had never seen. It is a too common occurrence for purchasers of land to neglect investigations of the title.

6. The land is not worth as much as Ward professes to have paid for it.

This is probably true, but Ward seems to be quite content with his bargain, and evidently thinks better of it than his neighbors. The fact that he has made no attempt to recover from Murray for false representations of its value, is quite as consistent with the hypothesis of honesty, as the fact that the consideration named in the deed is greater than the true value of the land, is with dishonesty. The probabilities are, that Ward, with the practical common sense which the evidence shows he possesses, wisely thought that, having

made a bad bargain, he could do better by submitting to the loss of a few hundred dollars than by having a quarrel and a lawsuit with a relation who had abused his confidence.

7. Ward continued on friendly terms with Murray and employed him as a laborer.

The employment was temporary and is sufficiently explained by the fact, that Ward had work to do and Murray was willing to do it.

8. Murray continued in possession of the land.

All the possession he had was such as a laborer would have of land and property he was hired to take care of.

Without particularly noticing the other facts relied upon in argument to sustain plaintiff's view of the case, they may all be disposed of by the single remark, that they would be far more likely to occur in an honest transaction than a dishonest one. We are of the opinion, that the evidence entirely fails to support the allegations of plaintiff's petition. It will therefore be dismissed with costs.

Reversed.