MEHLHOP VS. PETTIBONE and wife.

*January 11 — May 10, 1882.*

CONFLICT OF LAWS. *(1) Deed of land, in one state, executed in another state by residents thereof.*

FRAUDULENT CONVEYANCE. *(2–5) Exchange of lands: Fraud of one party; remedy of his creditors.*

[1. Whether, where land conveyed is in one state, and the deed is executed in another state, between residents thereof, its validity, so far as it depends upon the relation of the parties to each other (in this case as husband and wife), is to be determined by the law of the state of residence or that of the state in which the land lies, *quære.*]

2. To avoid a sale as in fraud of creditors, both parties to it must be connected with the fraudulent design.

3. Where lands are exchanged, and one of the deeds is adjudged void as to the grantor's creditors, this does not affect the validity of the other deed.

4. The defendant wife having conveyed her own land in Iowa (which was the homestead) to the defendant husband, by a valid deed, and taken from him in exchange a deed of Wisconsin land (whose value is not shown), and there being no evidence that she knew of her husband's insolvency or indebtedness, a judgment avoiding the deed to her, in favor of his creditors, is reversed for want of sufficient proof of fraud on her part.

[5. Whether the value or proceeds of the Wisconsin land could be followed by the husband's creditors in a court of equity, and made a charge upon the Iowa lands, not considered.]

APPEAL from the Circuit Court for *Waukesha* County.

The defendant, *Bronson Pettibone*, being a merchant at Dubuque, Iowa, and indebted to the plaintiff, *Mehlhop*, in the sum of about $1,500, and having an undivided two-thirds interest in 160 acres of land in Waukesha county, Wisconsin, conveyed the same to his wife, *Eveline*, March 29, 1879, and at the same time took from her a deed of the homestead in Dubuque, on which they then resided, and had resided for many years, and which was of the value of $2,700. On the 10th of July, 1879, *Bronson Pettibone* made an assignment of all his property, both real and personal (except the homestead and the Waukesha lands so conveyed to his wife), for the

benefit of his creditors. On July 21, 1879, the plaintiff brought suit against *Bronson Pettibone*, in the circuit court for Milwaukee county, upon the indebtedness above mentioned, and attached the Waukesha lands so conveyed to *Mrs. Pettibone*, and on October 10, 1879, recovered and docketed judgment therein for $1,661.53; and, upon filing a transcript of said judgment with the clerk of the circuit court for Waukesha county, he had an execution issued thereon, and levied upon the land so conveyed to *Mrs. Pettibone*, as the property of *Bronson;* and thereupon he commenced this suit in aid of that execution, to have the deed from *Bronson Pettibone* to his wife set aside and declared fraudulent and void as against the plaintiff, and to have the judgment decreed to be a lien upon the lands, and to have the lands and the interest which *Bronson Pettibone* had therein prior to March 29, 1879, subjected to the payment of the judgment the same as though the deed to his wife had never been made. *Bronson* and *Eveline Pettibone* each separately answered; and, upon the trial, the court found the above facts, and that *Bronson Pettibone* was insolvent when he so conveyed to *Mrs. Pettibone*, and also when he made the assignment; that his object in making the conveyance was to place the lands beyond the reach of his creditors; that neither that conveyance nor the one from *Mrs. Pettibone* to him was made in pursuance or in execution of any agreement of exchange between them, but both were made by *Bronson Pettibone* for the purpose stated; and that *Mrs. Pettibone* joined therein at the simple request of her husband, and solely to comply with such request; and that the Iowa homestead (except a small portion thereof), was exempt from execution, and beyond the reach of *Bronson Pettibone's* creditors; that the conveyance from *Bronson Pettibone* to his wife was void as against the plaintiff; but that *Mrs. Pettibone* should be allowed an equitable lien thereon to the amount of $500, in consideration of an equal value of land not exempt conveyed by her to her husband.

From a judgment entered in accordance with this finding, the defendants appealed.

*D. H. Sumner,* for the appellants.

For the respondent there was a brief by *Jenkins, Elliott & Winkler,* and oral argument by *Mr. Winkler.*

The following opinion was filed February 7, 1882:

CASSODAY, J.   By the statute of Iowa, in evidence, a married woman may receive grants or gifts of property from her husband without the intervention of trustees, and may convey her interest in real estate the same as other persons.   Sections 1192, 1207, Iowa Code.   Section 2206 of their code also provides that "a conveyance, transfer or lien, executed by either husband or wife, to or in favor of the other, shall be valid to the same extent as between other persons."   See *Blake v. Blake,* 7 Iowa, 46; *Shields v. Keys,* 24 Iowa, 298.   Such being the law of that state, there can be no question but that *Mrs. Pettibone* had the legal capacity to convey the Dubuque lots to her husband.   See *Jones v. Brandt,* 10 N. W. Rep., 854.   By that conveyance she divested herself of all title in those lots, valued at $2,700, and vested the same absolutely in her husband.   This being so, there can be no question but that she absolutely parted with a full and adequate consideration for the Waukesha lands purporting to be conveyed to her by her husband.   Did she get title thereto by that conveyance?   The land was in Wisconsin.   She and her husband, at the time of the conveyance, were domiciled in Iowa.   The agreement for the exchange of lands, and the deeds, were made and delivered in Iowa.   Is the giving and taking of the deed to the Waukesha lands to be governed by the law of Wisconsin or Iowa?   If the law of Iowa is to control, then the statute of that state clothed her with the legal capacity to take title directly from her husband, and the same would be valid at law.   Counsel for the appellant insists that, as all transactions took place in Iowa, the laws of that state must control in determining the

validity of the acts of the parties, and several cases in this court are cited in support of the contention. None of the citations, however, seem to meet the question here presented. That question is, whether the laws of Iowa, removing the disability of husband and wife in regard to their making conveyances to each other valid at law, is limited to conveyances of lands in Iowa, or extends to any lands owned by either in any state. In other words, does the disability to contract with or convey directly from one to the other, imposed by the laws of some states upon its citizens, extend to those outside of its limits, whenever they attempt to convey lands within its limits? Is the capacity of the parties, as well as the formal execution and validity of the conveyance, to be governed by the law of the place where the land is situated? The question is an interesting one, but as it was not discussed, and its determination is not essential to this decision, we refrain from considering it at this time. The respondent's contention will appear in its most favorable light by assuming, for the purposes of this case, that the laws of Wisconsin must control. It has frequently been held by this court that a deed based upon an adequate consideration, directly from the husband to the wife, is good in equity. *Putnam v. Bicknell*, 18 Wis., 333; *Hannan v. Oxley*, 23 Wis., 519; *Beard v. Dedolph*, 29 Wis., 136; *Fenelon v. Hogoboom*, 31 Wis., 172; *Carpenter v. Tatro*, 36 Wis., 297; *Dayton v. Walsh*, 47 Wis., 118; *Horton v. Dewey*, 53 Wis., 410. There would seem to be no good reason why contracts, when *bona fide*, made for such conveyance, based upon a valuable and adequate consideration, should not be specifically enforced in equity. 1 Bish. L. M. W., § 719; *Livingston v. Livingston*, 2 Johns. Ch., 537; *Wolfe v. Ins. Co.*, 39 N. Y., 49; *Hunt v. Dupuy*, 11 B. Mon., 285.

In *Hannan v. Oxley*, *supra*, it was held that "such a deed cannot be impeached in equity, by heirs, on the ground that it was made in consideration of property of the wife which belonged in law to the husband." In *Beard v. Dedolph*, *supra*,

this court went still further, and held that where a wife had a separate estate, and in exchange for a part of it took a note directly from her husband, and payable to him, she thereby, and as incident to her power to contract with reference to her own estate, acquired a good title to the note at law.

*Fenelon v. Hogoboom, supra*, was an action for unlawful conversion, but the chattel mortgage from the husband directly to the wife was held good at law. Whether the same rule would obtain in case of real property it seems unnecessary here to determine; for this is a bill in equity, and, the wife having parted with full consideration, the defense is certainly equitable, and must prevail unless the transaction was tainted with fraud. Can we say, upon the evidence before us, that such was the fact? Whatever may have been the rule at common law, the statute of this state makes the question of fraudulent intent in making such conveyances, " a question of fact, and not of law." Section 2323, R. S.

The burden of proving, as a matter of fact, that the conveyance was made with the intent to defraud creditors was upon the plaintiff. *Hyde v. Chapman*, 33 Wis., 392; *Barkow v. Sanger*, 47 Wis., 500; *Graham v. Railroad Co.*, 15 West. Jur., 69, and the numerous authorities cited in the note. Here there is no specific finding of fraudulent intent, but we think we are justified in finding such intent on the part of *Bronson Pettibone* as a fair inference from the evidence. But can we find such intent on the part of *Mrs. Pettibone?* The court finds that the exchange was made by the wife, " at the simple request of said *Bronson Pettibone*, solely to comply with such request." This finding goes to the full extent of the evidence. There is no evidence to show that the wife was aware of her husband's insolvency, or that he was in embarrassed circumstances, or even indebted to the plaintiff or any one at the time; but the contrary. It is true, she seems to have acquiesced in the exchange as he suggested. But she must have known that she was parting absolutely with all title

to the Dubuque property, valued at $2,700, and getting nothing in exchange but the Waukesha lands. There is nothing to show what the value of those lands was, but she had seen them, and we must presume that she had some notion of their value and was satisfied to make the exchange. Can we infer an intent to defraud upon her part from her passivity, and the mere fact that the transaction was between husband and wife?

We have recently held, in cases above cited, that such transactions should be subjected to close scrutiny, but we are unwilling to hold that they are presumptively fraudulent from the mere relation of the parties. In order to avoid a sale as being in fraud of creditors, both parties must be connected with the fraudulent design. *Sterling v. Ripley*, 3 Pinney, 155; *Hopkins v. Langton*, 30 Wis., 379. The same rule prevails in the courts of Iowa. *Fifield v. Gaston*, 12 Iowa, 218; *Steele v. Ward*, 25 Iowa, 535; *Preston v. Turner*, 36 Iowa, 671; *Drummond v. Couse*, 39 Iowa, 442; *Kellogg v. Aherin*, 48 Iowa, 299. The rule seems to be universal. *Leach v. Francis,* 41 Vt., 670; *Partelo v. Harris*, 26 Conn., 480; *Ewing v. Runkle*, 20 Ill., 448; *Violett v. Violett*, 2 Dana, 323; *Foster v. Hall*, 12 Pick., 89; *Bryne v. Becker*, 42 Mo., 264; *Bancroft v. Blizzard*, 13 Ohio, 30; *Splawn v. Martin*, 17 Ark., 146; *Governor v. Campbell*, 17 Ala., 566; *Ruhl v. Phillips*, 48 N. Y., 125; *Jaeger v. Kelley*, 52 N. Y., 274. It is thus established that before a conveyance, made by a grantor with the intent to defraud his creditors, will be set aside as against the grantee, it must be made to appear that such grantee participated in or had knowledge of such intent. The evidence here being insufficient to establish such knowledge or intent on the part of *Mrs. Pettibone*, and she having parted with full value in exchange for the deed of the Waukesha lands, there would seem to be no equitable grounds for setting the same aside. This is especially so, since it is well established that she could not reclaim the Dubuque lands conveyed to her husband; for, as between the parties, such conveyance was valid;

even if they both intended to defraud the husband's creditors. *Jones v. Lake,* 2 Wis., 210; *Eaton v. White,* 2 Wis., 292; *La C. & M. Railroad Co. v. Seeger,* 4 Wis., 268; *Fargo v. Ladd,* 6 Wis., 106; *Schettler v. Brunette,* 7 Wis., 197; *Reynolds v. Vilas,* 8 Wis., 471; *Janvrin v. Maxwell,* 23 Wis., 51; *Clemens v. Clemens,* 28 Wis., 637; *Dietrich v. Koch,* 35 Wis., 618; *Gunderman v. Gunnison,* 39 Mich., 317. Whether the value or proceeds of the Waukesha lands could be followed by the plaintiff, in a court of equity, into and made a charge upon the Dubuque lands, is a question not before us for consideration.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with directions to dismiss the complaint.

The respondent moved for a rehearing; and the following opinion was filed May 10, 1882:

CASSODAY, J. The statement of facts in this case was necessarily very brief, and merely indicated the view we took of the evidence in consultation, when both points urged for a rehearing were carefully considered, but perhaps not as clearly stated in the opinion as they should have been. The statement in the opinion that *Mrs. Pettibone* "parted with a full and adequate consideration," was perhaps in part an assumption. There may not have been a "full" consideration; but we thought then, and think now, that there was an "adequate consideration," or, at least, that the evidence failed to show that it was so grossly inadequate as to raise a presumption or inference of fraud on her part. It is to be remembered that there was no evidence as to the value of the Waukesha lands, and that the burden of proving fraud was on the plaintiff. It is true, as urged, that *Mrs. Pettibone* had no inchoate right of dower in the Waukesha lands, and that she did retain an inchoate right in the Dubuque lots while she and her husband continued

The Black River Imp. Co. vs. The La Crosse Booming & Trans. Co. et al.

to occupy them as a homestead. But such occupancy was not necessarily permanent, and there was some evidence tending to show a purpose to move onto the Waukesha property. Of course a vendee is chargeable with such notice as the facts and circumstances within his or her knowledge necessarily imply; but, as stated in the opinion, "there is no evidence to show that the wife was aware of her husband's insolvency, or that he was in embarrassed circumstances, or even indebted to the plaintiff or to any one at the time; but the contrary." The only circumstance disclosed in the evidence tending to throw any suspicions on the transaction, so far as *Mrs. Pettibone* is concerned, is referred to in the opinion. From the evidence in the case there seems to be less reason for setting aside the conveyance to the wife here than in the recent case of *Pulte v. Geller*, where a conveyance to a wife was sustained against the husband's creditors by the supreme court of Michigan. 11 N. W. Rep., 385.

For these reasons the motion must be denied.

*By the Court.*—Motion denied.