Honzik and husband, Appellants, vs. Delaglise and others, Respondents.

*February 26 — March 16, 1886.*

*(1) Vendor and purchaser of land: Specific performance: Improvements: House built by trespasser: Right to remove. (2) Costs in supreme court: Findings: Bill of exceptions.*

1. Plaintiff was in the actual possession of land under an oral contract for the sale and conveyance thereof to her, and had paid therefor in full and had made improvements. One of the defendants, with full knowledge of her rights, forcibly and against her prolonged resistance, took possession of the land and dug a cellar and moved a house thereon, and constructed additions to the house with the intention of making a permanent dwelling. Such house was worth about $1,300, and could be severed and removed from the premises without much injury to the land. During the contest for possession the said defendant obtained a deed of the land from the plaintiff's vendor, and afterwards conveyed the same to others of the defendants who had full knowledge of the facts. In an action for specific performance of the contract of sale, held that although both the defendant who took possession and moved the house upon the land, and his grantees, acted in the belief that the plaintiff's claim was invalid, yet they were trespassers and the court would not be justified in authorizing them to remove the house.

2. Though the findings of the trial court are unusually long, being so drawn to save the trouble of making a bill of exceptions, the costs recoverable by the appellant in this court will not be limited, especially if the respondents are not substantially prejudiced thereby.

APPEAL from the Circuit Court for *Manitowoc* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

This is a bill in equity filed May 25, 1883, to compel the defendant *Mary Delaglise*, and those claiming under her, to specifically perform an oral contract made by her June 1, 1879, and by which she agreed to sell and convey to the plaintiff *Mary Honzik* the premises in question, situated in the village of Antigo.    All the defendants answered separately.

There is no bill of exceptions.    Upon the trial the court found, in effect, (1, 15) that June 1, 1879, *Mary Delaglise* was the owner in fee of the premises in question, and that the same were then worth $10; (14) that the plaintiffs are husband and wife; (2) that the husband of *Mary Delaglise* was her agent, and had full power to contract for the sale of said premises to the plaintiff *Mary* as he did; (3) that June 1, 1879, *Mary Delaglise*, by her said husband and agent, entered into a verbal contract with *Mary Honzik*, whereby she agreed to sell and convey to her, by deed, with the usual covenants of warranty, the premises in suit for $10, to be paid on the delivery of the deed within a reasonable time, (4) with the understanding that *Mary Honzik* might enter into the immediate possession of the lots, (6) which she did, and made permanent and valuable improvements thereon; that the same were enclosed by a fence, with four other lots belonging to the plaintiff's mother and brother,— the plaintiff living with her mother during a portion of 1879 and during 1880–82, cultivating the lots so purchased by her by raising the usual vegetables in a family garden thereon; (7) that she so remained in the actual, open, notorious, and exclusive possession of said lots, clearing, fencing, and cultivating the same, and paying the taxes thereon under said verbal agreement until May 23, 1883, with the full knowledge of said *Mary Delaglise;* (14) that said lots

were then worth $300; (8) that during the fall of 1880 and the summer of 1881 the plaintiff *Mary* paid *Mary Delaglise* in full for the lots, and the latter then promised to execute and deliver to her a deed in a short time; (9, 10) that the plaintiff *Mary* frequently demanded such deed thereafter, but failed to get it; (11) that during the winter of 1882–83 the plaintiff *Mary* made preparations to build a house upon said lots, and for that purpose piled several thousand feet of select lumber thereon in a proper manner for seasoning; (11, 12) that during May 23, 24, and 25, 1883, the defendant *Joseph Putnam*, with full knowledge of the said rights, possession, and ownership of said lots and the lumber thereon, by said *Mary Honzik*, forcibly, and against a considerable and prolonged resistance, took possession of said lots, and removed the plaintiff's lumber therefrom into the street, built fences, and dug a cellar thereon, and walled it up with cedar posts, and moved a house thereon, and constructed wings thereto; that in the midst of such contest for possession, and on May 24, 1883, the defendant *Joseph Putnam* obtained a deed from said *Mary Delaglise*, executed and recorded on that day, and gave back to her a purchase-money mortgage, which was thereupon assigned to the husband of the defendant *Hutchinson;* that May 28, 1883, said *Joseph Putnam* executed a quitclaim deed of said premises to his daughter *Eula Putnam*, defendant herein, but it was not delivered or seen by her until May, 1885; (13) that January 7, 1884, due notice of the pendency of this action was filed in the register's office; that January 14, 1884, said *Joseph Putnam* procured a warranty deed of said lots from said *Eula Putnam* to the defendant *Lizzie C. V. Hutchinson*, by the procurement of her husband, who knew all the facts stated, and as a gift to her, and that said *Hutchinson* received such deed with full knowledge of the plaintiff's rights in and to the premises, and of said verbal agreement, her exclusive possession thereunder claiming as

owner, and her permanent and valuable improvements thereon; (16) that said house and wings were of the value of $1,300, and could be removed without injury to the premises except as it would be necessary to remove fences for that purpose, and except that it would leave the cellar uncovered; that said house was so constructed by said *Putnam* and *Hutchinson* with the intention of making such house a permanent dwelling, after full notice of the plaintiff's claim, but under the belief that such claim was invalid; that in the winter of 1883–84 said *Hutchinson* moved into said house, and has since occupied it as his place of abode; (17) that the only title said *Hutchinson* or his wife had to said lots is the deed from *Eula Putnam* above mentioned.

As conclusions of law the court found, in effect, that the plaintiffs were entitled to a specific performance of said oral agreement, with conveyances of the premises to *Mary Honzik*, but with permission to the defendant *Hutchinson* to remove from said premises the house, and additions thereto, within ninety days after written notice of the entry of the judgment served upon her; that in case of the affirmance of the judgment on appeal, she should be allowed sixty days within which to remove said buildings, after due notice in writing of the determination of such appeal. From that part of the judgment, entered in accordance with said findings, which permits the defendant *Hutchinson* to remove the buildings and additions thereon from the premises, the plaintiffs appeal.

For the appellants there was a brief by *G. W. Latta*, attorney, and *Nash & Nash*, of counsel, and oral argument by *Mr. L. J. Nash*. They argued, among other things, that the house and additions being indisputably fixtures and part of the lots themselves, equity has no power or jurisdiction to sever them and partition the lots to the plaintiffs and the buildings to the defendants; and that even if a court of equity has power and jurisdiction to make such

severance, yet there are no facts disclosed upon the record in this case which justified the court in making such a decree. *Waterman v. Dutton*, 6 Wis. 265; *Murray v. Van Derlyn*, 24 id. 67; *Thompson v. Thompson*, 16 id. 91; *Seatoff v. Anderson*, 28 id. 212; *Warner v. Fountain*, id. 405; *Huebschmann v. McHenry*, 29 id. 655; *Kimball v. Darling*, 32 id. 675; *Jenkins v. McCurdy*, 48 id. 628; *Cooper v. Cleghorn*, 50 id. 113; *Taylor v. Collins*, 51 id. 123; *Lipsky v. Borgman*, 52 id. 256; *Kimball v. Adams*, id. 554; *Benson v. Cutler*, 53 id. 107; *Zwietusch v. Watkins*, 61 id. 615; *Thayer v. Wright*, 4 Denio, 180; *Crest v. Jack*, 27 Am. Dec. 353; *Pomeroy v. Lambeth*, 36 id. 33; *Beverly v. Burke*, 54 id. 351; *Dart v. Hercules*, 57 Ill. 446; 2 Story's Eq. Jur. secs. 1237, 1238; 3 Pomeroy's Eq. Jur. secs. 1241, 1406, *n.* 2; *Rennie v. Young*, 2 DeG. & J. 136; *Ramsden v. Dyson*, L. R. 1 H. L. Cas. 129; *Cook v. Kraft*, 3 Lans. 512; *Davidson v. Barclay*, 63 Pa. St. 406; *Cannon v. Copeland*, 43 Ala. 252; *Moore v. Cable*, 1 Johns. Ch. 385; *Green v. Winter*, id. 26, 39; *Putnam v. Ritchie*, 6 Paige, 390, 403; Pomeroy on Spec. Perf. sec. 432; *Master of Clare Hall v. Harding*, 6 Hare, 296; *Monro v. Taylor*, 8 id. 60; *Sherwin v. Shakspear*, 5 DeG., M. & G. 517; Sedg. & W. on Trial of Tit. secs. 485, 487-8; 2 Kent's Comm. (12th ed.), 337, 338; Ewell on Fixtures, 57; *First Parish v. Jones*, 8 Cush. 189; *Goddard v. Bolster*, 6 Me. 427; *Scott v. Guernsey*, 48 N. Y. 106.

*Moses Hooper*, for the respondents, contended, *inter alia*, that the enforcement of specific performance of written contracts is in the discretion of the court. Each such contract stands, practically, on its own merits. Much more mere verbal contracts. Especially is this the case where the consideration paid is so small and inadequate, and the improvements of so slight value. *Benson v. Cutler*, 53 Wis. 113; *William v. Williams*, 50 id. 316; *Smith v. Wood*, 12 id. 383; *Hay v. Lewis*, 39 id. 368-9; Story's Eq. Jur. secs. 742, 769; Pomeroy on Spec. Perf. secs. 35-46; *Daniel v.*

*Frazer,* 40 Miss. 515; *King v. Hamilton,* 4 Pet. 328; *Hudson v. King,* 2 Heisk. 568–9. It is also practically within the discretion of a court in equity to fix the conditions upon which it will grant relief which a court at law could not give. *Ingles v. Patterson,* 36 Wis. 377; *Noonan v. Orton,* 21 id. 292–3; *Phillips v. Phillips,* 50 Mo. 608; *Pain v. Coombs,* 1 DeG. & J. 48–9; Pomeroy's Eq. Jur. secs. 385, 392–3, 400, 1403.

CASSODAY, J. The case is anomalous. The parol agreement for the lots was made, and the vendee went into the immediate and exclusive possession under it, with the consent and in pursuance of an understanding with the vendor, June 1, 1879. No one pretends to have any right to or claim upon the lots prior or superior to those of the vendor at the time of making the agreement. The vendee continued in such possession, and, in about two years, paid to the vendor the purchase price in full. She thereby became equitably entitled to a warranty deed from the vendor, which would have given her an absolute title to the lots in fee simple. Moreover, her possession was a legal estate which could have been sold on execution. She continued in such exclusive possession of the lots, cultivating the same, and making permanent and valuable improvements thereon, so that their value had increased thirty-fold at the time of her eviction. Such actual and exclusive possession by the vendee, under the agreement, was notice to the world that the lots were in equity absolutely hers, and that the vendor no longer had any right to or any claim upon them whatever. *Coe v. Manseau,* 62 Wis. 87; *First Nat. Bank v. Damm,* 63 Wis. 255. Certainly, this is so as to the vendor and the other defendants whose claims are only by virtue of a deed from the vendor, executed nearly four years after the vendee went into such actual and exclusive possession. In addition to such constructive notice, the defendants *Put-*

*nams* and *Hutchinsons* had actual notice of the vendee's rights to the premises, and her possession thereof prior to ejecting her. Such being the state of the case as found by the trial court, it is difficult to perceive the line of reasoning which would justify the unlawful entry and forcible eviction of the vendee after repeated struggles for two days of almost continued resistance.

The statutory law declares that "no person shall make any entry into real property but in cases where entry is given by law; and in such cases, not with strong hand, nor with a multitude of people, but only in a peaceable manner. Any person who shall make such unlawful or forcible entry, and detain the same, or who, having peaceably entered upon any property, forcibly holds the possession thereof, may be removed therefrom *and fined* in the manner provided" therein. Sec. 3360, R. S. In direct violation of this statute, *Putnam* and *Hutchinson* unlawfully entered, and with strong hand evicted the plaintiffs and forcibly retained possession. Counsel do not attempt to justify their conduct.

It is insisted, however, that as the unlawful entry and forcible eviction were made by *Putnam* and *Hutchinson* in the belief that the plaintiffs' claim to the lots was invalid, it is sufficient to justify a court of equity in authorizing them to sever the house, which at once, and by their own voluntary act, became a part of the realty, from the soil, and to remove it to some other premises, in order, we presume, to carry out in part their original intention of making it a permanent dwelling for themselves. Such severance, without such permission from the court, would be a clear act of waste, which a court of equity might properly enjoin. If this be true, the same court could not be justified in authorizing such waste in advance. It is to be remembered that the *Putnams* and *Hutchinsons* are found to be knowingly wrongful trespassers, with strong hand and actual force.

Such was the attitude they occupied when they placed the buildings upon the premises so as to become fixtures and a part of the realty. The plea of good faith by such trespassers is not available in equity against the equitable and rightful owner of the land. *Huebschmann v. McHenry*, 29 Wis. 655; *Kimball v. Adams*, 52 Wis. 554; *Davidson v. Barclay*, 63 Pa. St. 417; *Dart v. Hercules*, 57 Ill. 446; *Wadleigh v. Janvrin*, 41 N. H. 503; *Wentz v. Fincher*, 55 Am. Dec. 416; *Rennie v. Young*, 2 De Gex & J. 136; *Ramsden v. Dyson*, 1 H. L. App. Cas. 141, 168; *Cannon v. Copeland*, 43 Ala. 252; *Cook v. Kraft*, 3 Lans. 512. It is simply an attempt to secure to the trespassers, through the aid of equity, the investments made in direct violation of law. Considering the buildings as a part of the realty, and as such the exclusive property of the plaintiff *Mary*, as we must in a court of equity, and the claim made is nothing less than to compel her to surrender up a portion of her land to those who unlawfully and forcibly deprived her of her possession, in order to prevent the law-breakers from suffering any loss by reason of their own wrong. It is not the case of a person entering into possession of unoccupied land, under color of a superior or adverse title, with the knowledge of, but without any objection from, the true owner. The distinction is made by two of the judges writing the leading opinions in the case above cited from the House of Lords. It is there said: "But if a stranger build knowingly upon my land, there is no principle of equity which prevents me from insisting on having back my land, with all the additional value which the occupier has imprudently added to it." Here the case is much stronger. The trespassers, in violation of the statutes, unlawfully and with strong hand entered upon the premises, forcibly evicted the plaintiffs, and forcibly retained the possession. We must hold that they have no standing in a court of equity to be relieved from the position in which they, in their own wrong, have voluntarily placed themselves.

We do not think we would be justified in limiting the costs in this court merely because the findings are unusually long, to save the trouble of making a bill of exceptions; especially as it does not appear to us that the defendants are thereby substantially prejudiced.

*By the Court.*— That portion of the judgment appealed from is reversed, and the cause is remanded with directions to perfect the judgment in favor of the plaintiffs in accordance with this opinion, and for further proceedings according to law.