SEMPLE, Appellant, vs. WHORTON and others, Respondents.
SEMPLE, Respondent, vs. WHORTON and others, Appellants.

*March 24 — April 12, 1887.*

*(1) Tax deed: Defective execution: Redemption. (2) Deed: Breach of covenants: Sale for taxes. (3) Wife joining in deed to bar dower: Liability on covenants. (4, 5) Failure of title to part of land conveyed: Measure of damages: Evidence.*

1. A tax deed having but one witness, though recorded, will not give the grantee constructive possession, nor will the right of redemption be barred thereby.

Semple vs. Whorton and others.

2. Land conveyed by warranty deed had been sold for taxes, but the right of redemption remained. *Held*, that there was no breach of the covenant of seizin, but at most an outstanding incumbrance, upon paying which the grantee might recover on the covenant against incumbrances.

3. A wife who joins with her husband in the execution of a deed, merely for the purpose of barring her dower, is not personally liable on the covenants in the deed.

4. Where the title fails to only a part of the land conveyed, the grantee may recover in an action on the covenants of seizin and right to convey, or upon an agreement to convey, such a fractional part of the whole consideration paid as the value, at the time of the purchase, of the piece to which the title fails bears to the value of the whole piece purchased, and interest thereon during the time he has been deprived of the use of such fractional part, but not exceeding six years. A clerical error in the attempted statement of the rule in *Messer v. Oestreich*, 52 Wis. 696 (inadvertently repeated in *Bartelt v. Braunsdorf*, 57 id. 3, and *Docter v. Hellberg*, 65 id. 424), corrected.

5. Such values may be shown by parol evidence, and are to be determined from the actual and visible conditions of the several parts at the time of the purchase, and not from the conditions then supposed to exist or contemplated by the parties.

TAYLOR, J., dissenting, is of the opinion that the rule of damages above stated is merely a general rule for determining, in ordinary cases, the amount paid for the part to which title fails, and that it should not be applied in a case where it turns out that such part is of more value than any of the other parts of the tract purchased, not on account of anything in the contemplation of the parties. but by reason of facts which neither of them knew at the time and which the purchaser did not take into consideration when purchasing or in fixing the price which he was willing to pay.

APPEALS from the Circuit Court for *Outagamie* County. The case is thus stated by Mr. Justice CASSODAY:

This action was commenced October 8, 1885, and is based wholly upon a breach of the covenant of seizin and right to convey. November 11, 1885, the defendants gave notice of an offer to allow judgment for $210, with interest from September 12, 1883, which was rejected. The jury was waived, and the cause tried by the court May 7, 1886. October 12, 1886, the findings of the court were filed.

It appears, in effect, from the findings and record in the case, that September 12, 1883, *William* and *John Whorton* and their wives executed and delivered to the plaintiff their warranty deed, with full covenants, for 560 acres of land, consisting of fourteen forties scattered through five different sections of a certain township, for a consideration of $1,400, then paid and recited in the deed; that at the time of the purchase there was some excitement in respect to iron being found in the neighborhood of these lands, which were then known to all parties as pine slashings, capable of being used for agricultural purposes; that the prospect of finding iron in the lands or some of them induced the purchase at the price paid; that at the time neither party had any idea that there were any improvements or improvement on any of the lands, but all supposed them to be all wild, unimproved, and uncultivated; that in the negotiations for the lands between the parties it was understood that the lands were not all of equal value, but that some were better than others; that the *Whortons* held the lands at $5 per acre if sold in separate parcels, but would sell the whole fourteen forties throughout, at $2.50 per acre, or $100 per forty, and the sale for the whole was closed on these terms; that the plaintiff got a good title to all of the lands except two forties; that upon one of these there was at the time an outstanding tax title, which the plaintiff purchased in, and paid out therefor $40, April 21, 1885; that neither of the *Whortons* had any right, title, or interest in the other forty at the time, but the same was the absolute property of one Coon, who then held the same by deed of prior date giving him the paramount and absolute right and title thereto; that this Coon forty acres was, at the time of the purchase, of the actual value of $648, of which $530 consisted of improvements, to wit, fifteen acres of clearing, a house, out-buildings, etc., and the balance, consisting of the land without such improvements, was $118; that the actual value

of the whole fourteen forties at the time of the purchase was $952; that the wives of the *Whortons*, defendants herein, had no interest in any of the lands, except an inchoate right of dower, and they joined in the execution of the deed merely to bar the same; that the plaintiff sustained damage by reason of said breaches in the sum of $688.

As conclusions of law, the court found that *William* and *John Whorton* were indebted to the plaintiff in the sum of $685, with interest on $648 from September 12, 1883, and on $40 from April 21, 1885, making in the aggregate $829.29, for which he was entitled to judgment against them with costs; that said wives were entitled to judgment, on their separate answers, dismissing the complaint upon the merits as against them, and for costs. Both parties filed exceptions. November 24, 1886, *William* and *John Whorton* appealed from the judgment entered upon the findings, and December 11, 1886, the plaintiff also appealed therefrom.

For the plaintiff there was a brief by *E. J. Goodrick*, and oral argument by *Mr. Goodrick* and *Mr. J. T. Fish*. As to the proper rule of damages for the failure of title to a part of the land conveyed, they cited *Wager v. Schuyler*, 1 Wend. 553; *Dimmick v. Lockwood*, 10 id. 142; *Morris v. Phillips*, 5 Johns. 56; *Guthrie v. Pugsley*, 12 id. 126; *Phillips v. Reickert*, 17 Ind. 120; *Weatherbee v. Bennett*, 2 Allen, 428; *Ela v. Card*, 2 N. H. 175; *Partridge v. Hatch*, 18 id. 494; *Cornell v. Jackson*, 3 Cush. 506; Rawle on Covenants, 284–6; 2 Suth. on Dam. 276, 277; 1 Sedgw. on Dam. (7th ed.), 339; *Terry's Ex'rs v. Drabenstadt*, 68 Pa. St. 400; *Tone v. Wilson*, 81 Ill. 529; *Messer v. Oestreich*, 52 Wis. 684; *Docter v. Hellberg*, 65 id. 415; *Bartelt v. Braunsdorf*, 57 id. 1; *Willson v. Willson*, 57 Am. Dec. 320; *Hunt v. Orwig*, 17 B. Mon. 73; *Beaupland v. McKeen*, 28 Pa. St. 124; *Walker v. Johnson*, 13 Ark. 522. The oral testimony offered by the defendants on the trial was inadmissible and should have

been excluded. *Hei v. Heller*, 53 Wis. 415; *Hooker v. Hyde*, 61 id. 204; *Kirch v. Davies*, 55 id. 287; *Steele v. Schricker*, id. 134; *Hubbard v. Marshall*, 50 id. 322; *Cooper v. Cleghorn*, id. 113; *Breed v. Ketchum*, 51 id. 164; *Ballston Spa Bank v. Marine Bank*, 16 id. 120.

*Moses Hooper*, for the defendants, contended, *inter alia*, that the warrantor of lands, on failure of title to a part, should respond in damages measured by the value of the lands in their supposed condition, and not measured by the actual value growing out of conditions not known to either party, and not entering into their contemplation. *Gore v. Brazier*, 3 Mass. 523, 543–4; *Park v. Bates*, 12 Vt. 389. See, also, *Bond v. Quattlebaum*, 1 McCord, 584; *Wiley v. Howard*, 15 Ind. 169, 175; *Crabtree v. Crawford*, 25 Ill. 248; *Michael v. Mills*, 17 Ohio, 601, 604; *Hoot v. Spade*, 20 Ind. 326; *Phillips v. Reichert*, 17 id. 120; *Billmeyer v. Wagner*, 91 Pa. St. 92; *Mihills Mfg. Co. v. Day Bros.* 50 Iowa, 250; *Williamson v. Test*, 24 id. 138; *Abbott v. Gatch*, 13 Md. 315; *Caswell v. Wendell*, 4 Mass. 108. The warrantor of lands, with improvements thereon not within the knowledge or contemplation of either party, in the possession of the party who made the improvements, should not respond in damages on account of the improvements. *Mason v. Kellogg*, 38 Mich. 132. The warrantor of several tracts of land conveyed by one deed, mentioning one consideration for all, but on a sale of the separate tracts each for a specific price, should respond in damages only for the separate purchase price of the parcel to which title fails. Where there is a separate valuation of each tract, evidently the law should look upon the transaction as though a separate deed had been made for each tract. *Leland v. Stone*, 10 Mass. 459, 462–3; *Harlow v. Thomas*, 15 Pick. 66, 70; *Childs v. Shower*, 18 Iowa, 261; *Coles v. Soulsby*, 21 Cal. 47. It is competent to prove by parol that the separate parcels of land conveyed by one deed for one expressed consideration, were in fact sold each

for a separate consideration, parcel of the consideration named in the deed. *Hahn v. Doolittle*, 18 Wis. 196; *Simmons v. Cloonan*, 47 N. Y. 3; *Curtiss v. Ayrault*, id. 73; *Knapp v. Warner*, 57 id. 668; *Donlin v. Daegling*, 80 Ill. 608; *Major v. Dunnavant*, 25 id. 238; *Leland v. Stone*, 10 Mass. 459, 462–4; *White v. Miller*, 22 Vt. 380; *Buckley's Appeal*, 48 Pa. St. 491. It was also competent to prove by parol in this action the understanding of the parties as to the condition of the lands and the uses for which the same were fit and in view of which they were bought, to show that after discovered conditions, affecting their actual value, did not enter into the contemplation of the parties. *Hahn v. Doolittle*, 18 Wis. 196; *Knapp v. Warner*, 57 N. Y. 668; *Sigerson v. Cushing*, 14 Wis. 527, 548; *Wrigglesworth v. Wrigglesworth*, 45 id. 255, 258; 1 Greenl. Evi. secs. 276, 287–8; *Hall v. Davis*, 36 N. H. 569; *Emery v. Webster*, 42 Me. 204; *Donlin v. Daegling*, 80 Ill. 608; *Comm. v. Roxbury*, 9 Gray, 493; *Abbott v. Abbott*, 51 Me. 575, 581; *Harlow v. Thomas*, 15 Pick. 66; *Leland v. Stone*, 10 id. 459, 461–3; *White v. Miller*, 22 Vt. 380; *Schuyler v. Russ*, 2 Caines, 202; *Buckley's Appeal*, 48 Pa. St. 491. Married women uniting with their husbands in covenants of warranty, through the ignorance of the scrivener, where the intention of all the parties is that they shall only release dower, are not liable for damages on failure of title. R. S. secs. 2222, 2221, 2345; Rawle on Covenants, 537; 1 Bish. Law of Married Women, sec. 603; *Rosenthal v. Mayhugh*, 33 Ohio St. 159; *Childs v. McChesney*, 20 Iowa, 431; *Lyon v. Metcalf*, 12 id. 93; *Botsford v. Wilson*, 75 Ill. 133, 134; *Knox v. Brady*, 74 id. 476; *Goodenough v. Fellows*, 53 Vt. 102; *Bressler v. Kent*, 61 Ill. 426, 428; Tyler on Inf. & Cov. 615; *McCormick v. Hunter*, 50 Ind. 186, 188; *Blake v. Blake*, 7 Iowa, 46, 54, 55; *Ulp v. Campbell*, 19 Pa. St. 361, 363; *Townsend v. Brown*, 16 S. C. 91. And the facts bringing them within this rule may be proven by parol. *Hahn v. Doolittle*, 18 Wis. 196; *Garrison v. Owens*,

1 Pin. 471; *Donlin v. Daegling*, 80 Ill. 608; *Knapp v. Warner*, 57 id. 668.

CASSODAY, J. It appears from the record that October 31, 1872, the county clerk of Shawano county executed and acknowledged a tax deed for the unpaid taxes of 1868, on the sale of 1869, purporting to convey to that county the forty acres of land, the title to which is alleged in the complaint to have been in one Andrew Vang at the time the *Whortons* purported to convey the same to the plaintiff. That deed was recorded December, 1872, notwithstanding it only had one witness. May 25, 1875, the county clerk of that county executed and acknowledged a quitclaim deed of the same land to one H. Sheldon, and the same was recorded on the same day, November 12, 1879, the said tax deed was signed under the attesting clause by another witness; but before he signed it, the person who was such county clerk in 1872, but had ceased to hold such office, asserted to such witness that he had signed it as such clerk at the time aforesaid, and such last-named witness thereupon signed as aforesaid, and the said tax deed was thereupon immediately re-recorded. October 5, 1882, one A. J. Sheldon executed a deed purporting to convey the same forty to Andrew Vang. April 21, 1885, Andrew Vang and wife executed a deed purporting to convey the same forty (and four others not involved in this action) to the plaintiff, for which the plaintiff then paid Vang $200, or an average of $40 for each forty. The undisputed evidence was to the effect that that forty was worthless.

Upon these facts the trial court held that the covenant of seizin was broken as to that forty; and that by reason thereof the plaintiff was entitled to recover the $40 paid to buy in such tax title, with interest thereon from the time of such payment. Can this be sustained as a matter of law? Assuming that forty to have been unoccupied, yet the re-

cording of the tax deed, as executed in 1872, with only one witness, would not give to the county as grantee, or any one claiming under it, the constructive possession. Assuming that the tax deed was perfected by the acquisition of a second witness, in 1879, yet four years prior to that time there was at least an attempt made on the part of the county to convey the land by quitclaim deed to H. Sheldon. While a tax deed regular upon its face and duly witnessed is presumptive evidence of the requisite authority on the part of the clerk to execute the same, yet no such presumption of authority to execute such quitclaim deed can be indulged. Sec. 653, R. S.; *Beemis v. Weege*, 67 Wis. 435. On the contrary, such authority must be proved. *Ibid.* Until such tax deed was duly witnessed and recorded, the land therein described was liable to be redeemed from such tax, and when so redeemed such deed would become a nullity. Sec. 1165, R. S.; *Internat. L. Ins. Co. v. Scales*, 27 Wis. 640; *Hewitt v. Week*, 59 Wis. 447; *Baldwin v. Ely*, 66 Wis. 181. This being so, and assuming that H. Sheldon paid a valuable consideration for such quitclaim deed, it probably operated as a payment of the tax, or, at least, placed the county in an awkward position to subsequently assert title in itself. It does not appear that the county or H. Sheldon subsequently ever asserted such title, or attempted to convey the same. It appears from the record that the deed to Vang was from A. J. Sheldon, not from H. Sheldon. True, none of such several deeds are in the record, but the substance and effect of each of them is said to be stated. From what has been said, it appears that Vang had no outstanding tax title or title of any kind to convey to the plaintiff, April 21, 1885, much less a deed sufficient to give him the constructive possession and operating as a constructive eviction of the *Whortons*, or the plaintiff as their grantee. But assuming that the taxes upon which such tax deed was given were not redeemed by the attempted purchase by H. Sheldon,

still they would, at most, be a mere outstanding incumbrance upon the land for which the *Whortons* would not be liable to the plaintiff on any of their covenants until he had redeemed and discharged the same. *Pillsbury v. Mitchell,* 5 Wis. 17; *Mitchell v. Pillsbury,* 5 Wis. 407. We find nothing in the record showing any such redemption of such land from such taxes by the plaintiff's paying any one authorized to receive the same. But, even had he so redeemed, still he would have had no remedy in this action, which is based solely upon a breach of the covenant of seizin and right to convey, but would necessarily be remitted to his action for a breach of the covenant against incumbrances or some of the other covenants of the deed. It follows that the plaintiff improperly recovered for the $40, and interest thereon from April 21, 1885.

2. It is conceded that the *Whortons* never had any title to the Coon forty. It is claimed that it was included in the description of their deed to the plaintiff by some inadvertence or mistake. That forty was partly cleared up, with a house, out-buildings, and other improvements upon it. Its value at the time of such conveyance, without the improvements, was only $118, while its value with such improvements at that time was $648, making $530 for the improvements alone. The actual value at that time of the entire fourteen forties included in the deed was only $952. They were all sold and purchased as unoccupied and unimproved slashings, or lands from which the pine timber had been removed, and of variable values, and with the expectation or possibility of iron being found in the lands or some of them, at the rate of $100 for each forty, or $1,400 for the whole. The liability of the *Whortons* to the plaintiff for a breach of the covenant of seizin by reason of their not having title to the Coon forty is admitted. The only controversy in that regard is as to the proper measure of damages. It is conceded by all that, had the title failed to each

and every of the entire fourteen forties, then the plaintiff would have been entitled to recover the entire consideration paid, with interest from the time of such payment, regardless of the question whether the actual value of all such lands were at the time less or greater than the consideration so paid. Such is undoubtedly the rule. The difficulty here seems to have grown out of the fact that the parties to the deed were not familiar with the actual condition of all the lands therein described, and thus included the Coon forty so improved,— a condition of things not then in contemplation of any of the parties,— and to which the *Whortons* had no title.

In apportioning and assessing the damages arising from such partial failure of title, it is claimed upon the part of the defense that the court or jury should be limited to the consideration paid, and the actual value of the whole and also the part to which the title failed, in view of such facts and circumstances *only as were actually in the contemplation* of both, or at least one, of the parties at the time of making the conveyance; while on the part of the plaintiff it is claimed that such apportionment and assessment of damages must depend entirely upon the consideration paid, and the *actual value*, at the time, of the whole and also of the part to which the title failed. Each party insists that his position is sustained by the decision of this court in *Messer v. Oestreich*, 52 Wis. 684. The trial court, while professing to follow the rulings in that case, rejected both claims, and. held, in effect, that the plaintiff was entitled to recover as damages, by reason of such failure of title, the actual value of the Coon forty with all the improvements thereon at the time of making the conveyance, with interest thereon from that date.

This ruling of the learned trial judge in this case was substantially the same as the instruction of the trial court to the jury in *Messer v. Oestreich*, 52 Wis. 694, and which in-

struction was there held to be error, and for which, in part, the judgment in that case was reversed. It is there said that "in *Morris v. Phelps*, 5 Johns. 49, the title to one sixth of the two tracts described in one deed failed, and the title to five sixths of the tract described in another deed failed; and KENT, C. J., giving the opinion of the court, makes this statement, and cites from the Year Books and Coke in support of it: 'The plaintiff was entitled to recover damages only in proportion to the extent of the defect of title. This is an old and well-settled rule of damages that, if one be bound to warrant, he warrants the entirety; but he shall not render in value but for that which was lost.' He concludes thus: 'There is, then, no law or reason why the plaintiff should recover more than one sixth of the consideration money and interest for the two tracts mentioned in the first count, and five sixths of the consideration money and interest for the tract contained in the second count.'" Pages 695, 696. Then, after citing several cases to the same effect, an attempt was made to state the conclusions of this court in that case, but in doing so, by some blunder of the writer hereof, or some inadvertence on the part of the copyist, the words "whole purchase price" were used instead of *the value of the whole piece purchased*, thus making nonsense of the context and what was designed by the court to be good sense. Having made the blunder, and the rule sanctioned being clearly in the mind of every member of the court, it was but a mere inadvertence to literally copy it in subsequent opinions. *Bartelt v. Braunsdorf*, 57 Wis. 3; *Docter v. Hellberg*, 65 Wis. 424.

What the court held in *Messer v. Oestreich*, 52 Wis. 696, and what the writer hereof there intended to say, was this: In the light of these authorities and others which might be cited, and in the absence of fraud, we conclude that where the title fails to only a part of the land conveyed, the grantee may recover in an action on the covenants of seizin

and right to convey, or upon an agreement to convey, such a fractional part of the whole consideration paid as the value, at the time of the purchase, of the piece to which the title fails bears to the value of the whole piece purchased, and interest thereon during the time he has been deprived of the use of such fractional part, but not exceeding six years. It was there also held, in effect, that such comparative values should be taken as of the date of the purchase.

It follows as a corollary from these propositions, and was in fact held in some of the cases cited in that opinion, that parol evidence is admissible to prove such values. But the learned counsel for the defendants strenuously contends that such values are not to be determined from the actual and visible conditions of the several pieces of land at the time of the purchase, but from the conditions then supposed to exist, or contemplated by the parties, or at least one of them. In other words, that the Coon forty should be considered in such determination of values the same as though it had at the time of the purchase been pine slashings and not an improved farm. Such a rule would open the door to great uncertainty, if not perjury and fraud. The difficulty of proving what was in the contemplation of a party at a given time,— his mental conceptions,— except by himself, is evident; and the impossibility of disproving it at times is also apparent. The only case cited which seems to support such theory is *Leland v. Stone*, 10 Mass. 459. That was an action for a breach of the covenant of seizin contained in a deed of two pieces of land therein purporting to have been conveyed by the defendant to the plaintiff. The breach alleged was the absence of title at the time of the purchase to one of the pieces, consisting of one acre of land with the buildings thereon. The grantor pleaded specially, and in effect proved that when he so deeded he had no title to that acre; that eight years before he had conveyed it to his son by deed then of record; that the son had built a

house upon it, and was living therein when the deed was delivered to the grantee,— all of which was then known to both parties; and that there was no intention of the grantor to sell, or the grantee to purchase, the acre then owned by the son. The court, after informing the jury that the defendant had failed to maintain the issue of *non est factum*, instructed them "that if they were clearly satisfied that neither the grantor nor grantee contemplated the passing of this one acre, and that no part of the consideration money was applicable to it, they might do justice, according to law, by finding the issue for the plaintiff and giving him no more than nominal damages. This was done by them, there being no evidence on the part of the plaintiff to contradict the defense." This verdict was sustained on the ground that the jury necessarily "found that the defendant paid nothing for that acre; that it was not considered by either party as included in the purchase, and was included in the deed by mistake. . . . As the defendant was not seized of the acre of land in question, it did not pass by the deed; *and the measure of* damages, therefore, would be the consideration paid for it, . . . In the present case the defendant has proved that in fact nothing was paid for this acre, and the jury have therefore very properly given only nominal damages." That case was followed, and the same rule sanctioned, in *Barns v. Learned*, 5 N. H. 264; *Nutting v. Herbert*, 35 N. H. 120.

In each of these three cases the whole consideration paid was agreed to be paid specifically for the lands to which the title actually passed by the deed; and the piece of land, the title to which did not pass by the deed, was inserted by mistake and without any consideration. The case of *Leland v. Stone, supra*, however, seems to have been limited, if not overruled, by subsequent cases in the same state. *Harlow v. Thomas*, 15 Pick. 66; *Spurr v. Andrew*, 6 Allen, 420. Thus, in seeking to distinguish the case in *Harlow v.*

*Thomas*, it was said: "If two tracts of land are conveyed in one deed, but a separate price is agreed upon for each, then, on a breach of the covenant of seizin as to one tract, the rule of damages will be the sum which was paid for that tract."

Assuming such to be the correct rule, yet it seems to us that the evidence here fails to bring the case within the rule thus stated. True, the answer alleges, in effect, that each forty was sold " at the agreed price " of $100. But there is no evidence to show that any specific price was agreed upon for the Coon forty, or the other thirteen forties, or any one of them. The most that appears is that the fourteen forties were regarded in a general way as pine slashings of unequal value, and sold as a whole at $2.50 per acre, or $100 per forty, in the aggregate, but with no specific valuation fixed by agreement upon any one forty. The grantors manifestly supposed they were selling, and by the deed actually conveying, the fourteen forties described; and the grantee supposed he was thereby acquiring title to the same fourteen forties, for the price named. The deed purported to convey the Coon forty as well as the other thirteen forties. The grantors therein covenanted that they were then "well seized of the premises above described," including the Coon forty, "as of a good, sure, perfect, absolute, and indefeasible estate of inheritance in the law, in fee-simple." Certainly the buildings and other improvements were as much a part of the realty as the soil. *Honzik v. Delaglise*, 65 Wis. 501. This being so, upon what theory are such improvements to be taken out from under the operation of such covenant in this action at law, where no equitable counterclaim, invoking equitable relief on the ground of mutual mistake, is interposed? There seems to be no more reason for excluding such improvements in apportioning such damages than there would have been to exclude valuable pine timber growing upon some of the

other forties, had there been any. There is no more reason for confining such valuation to a section or subsection of the land divided horizontally than there would be to confine it to a fraction of the land when divided by a perpendicular line. The covenant relates to the one section or fraction as well as the other. The improvements consisted of open and visible conditions. It is unlike the case of a valuable mine subsequently discovered, suggested on the argument, of which we give no opinion. The doctrine of betterments is not involved.

The three cases cited do not go upon the theory of such part exclusion, but on the theory of a specific price agreed upon as to each piece, or of one piece being included by mistake and without any agreement to pay therefor and hence without consideration. Whether relief in equity might have been granted is not for us here to say, as the question is not presented. Some of the cases mentioned, however, indicate that it might. Thus, in commenting upon *Leland v. Stone, supra,* the court in *Spurr v. Andrew,* 6 Allen, 423, said: " So far as that case may be supposed to infringe upon the rule excluding oral evidence when offered to control or contradict the deed itself as the proper evidence of the contract between the parties, it is not to be extended. Under the equity powers conferred upon this court, full opportunity is afforded for parties aggrieved by the fact that their contracts as drawn and executed were the result of accident or mistake, and not such as to give effect to the real contract intended to be made, to apply to this court to have the same reformed and corrected. In that way proper relief may be granted." If a party may be relieved from his covenant in a case like this, it seems to us that his only remedy would be in equity.

3. The wives, having joined in the execution of the deed merely for the purpose of barring their dower right, were properly held not personally liable in this action on cove-

nant. It follows that the plaintiff is entitled to recover against *William G.* and *John H. Whorton* such proportionate share of the whole consideration paid as the value of the Coon forty at the time of the purchase then bore to the value of the fourteen forties.

*By the Court.*— The judgment of the circuit court is reversed on both appeals, and the cause is remanded, with directions to enter judgment in favor of the plaintiff in accordance with this opinion.

TAYLOR, J. *W. G. Whorton* and the other defendants sold and conveyed to *Parlon Semple,* the plaintiff, fourteen forty-acre tracts of land, by warranty deed, for the gross consideration of $1,400, or at the rate of $100 per forty acres. The grantors had no title to one forty-acre tract at the time the deed was given, and this action is brought mainly to recover damage for the breach of warranty as to the title of such forty-acre tract. The evidence both of the plaintiff, *Semple,* and of the defendants, the *Whortons,* shows conclusively that at the time of the sale it was understood by both parties that the lands sold were none of them improved or farm lands. They were all supposed to be pine slashings, or lands from which the pine timber had been removed, but entirely unimproved in any way. There is evidence on the part of the plaintiff tending to show that one inducement in buying the same was that he thought there might be iron ore on some part of the tract. But the evidence wholly negatives the idea that the plaintiff bought the land with the expectation that any part of it was improved in any way. It turned out that the defendants had never owned the lands to which the title failed, and that it was a mere mistake on their part in supposing that it was their land and undertaking to convey it by their deed. It also appeared on the trial that this forty acres was an improved farm with a dwelling-house, outhouses, and fences

thereon; that the value of the forty acres without any improvements, and in the state that both parties supposed it to be at the time of the conveyance, was about $120; that the improvements were of the value of $528, or the whole value of the forty acres $648. The court found as a fact that the value of the forty acres at the date of the deed was $648 in all, including all the improvements, and that at the time of the execution and delivering of said deed the actual value of the entire fourteen forties was only the sum of $952; in other words, that the other thirteen forties were only worth the sum of $304. The court ordered judgment in favor of the plaintiff, for the breach of the covenant as to this improved forty acres, for the said sum of $648, and interest from the date of the deed to the date of the judgment. There was also included in the judgment about $40 additional for an alleged breach of the warranty as to another forty-acre tract; but, for the purposes of this opinion, that finding of the court is entirely immaterial, and I do not differ with the majority of this court in their opinion in regard to that $40.

From the judgment rendered the plaintiff appeals, and alleges as error that the court ought to have rendered judgment in his favor, for the breach of covenant as to this forty-acre tract, for the sum of $952, and interest from the date of the deed to the date of the judgment. The defendants also appealed from the judgment, and they allege as error that the plaintiff should have been limited in his recovery to $100 and interest, or at most to the comparative value of this forty acres, without including in such value anything for the improvements. Such comparative value was found to be $118 or $120.

In the opinion of the majority of this court, the plaintiff is entitled to recover, for a breach of the covenant to the forty acres in question, the same proportion of the $1,400 purchase money that the value of the forty acres, with the

improvements, bears to the actual value of the whole tract, which, according to the finding of the trial court, is $648; and the value of the whole tract was in fact only $952, so that the plaintiff is to recover as his damages on the breach 648-952 of $1,400, the purchase price, with interest thereon, which amounts to the sum of $952.72, a few cents more than the actual value of all the lands purchased by him.

The result is based upon a general rule laid down in a great many cases both in this and other courts that in an action for a breach of the covenant of seizin in a deed of real estate, where the title fails to a part of the land conveyed, and the land is conveyed as a whole for a gross sum agreed upon, the measure of damages is the same proportion of the purchase money that the value of the land to which the title fails bears to the actual value of all the lands conveyed, the values being ascertained at the date of the sale. The well-established rule in the same courts is that the measure of damages in all cases of a breach of the covenant of seizin when the whole title fails, is the purchase price and interest. It follows that this rule must be applied to the case of a breach of the covenant when the title to a part only fails. When the title to a part fails, the court must, if it can, ascertain what the grantee paid for that part; and when a gross sum is paid for the whole the rule above stated is, under ordinary circumstances, the most equitable, and perhaps the most certain, rule for ascertaining that fact. This rule was established as a general rule in ordinary cases for the purpose rather of getting at the price paid for the part lost and so fixing the amount of damages, than as an arbitrary rule for assessing damages. This is evident from the fact that when the title fails to an undivided part of the whole land conveyed the damages are always limited to the same part of the whole purchase money, without any inquiry as to the value of the land conveyed. It must be evident that the value above stated, in the case of the failure

of title to a separate part of the lands conveyed, cannot be an arbitrary rule to be applied to all cases irrespective of the facts which tend to show that no such price was in fact paid for the tract to which the title failed. It is at most *prima facie* evidence of the fact.

No court would, I think, insist that the rule should be applied when the evidence clearly shows what price was actually paid for the portion to which the title failed, whatever the form of the deed might be. In the case at bar, had the evidence shown that the plaintiff had contracted to pay the defendants $1,300 for the other thirteen forty-acre tracts, and, before the execution of the conveyance, the plaintiff had agreed to purchase the forty acres in question and pay $100 for it, and the fourteen tracts were afterwards put in the same deed for the gross sum of $1,400, no court could, I think, with any degree of justice, say that in case of a failure of the title to the forty acres last purchased, the grantee ought to recover more than the $100 and interest, irrespective of its real or comparative value. In all such cases the courts limit the recovery to the money actually paid and interest, no matter what the form of the deed. See *Rich v. Johnson*, 2 Pin. 88; *Mecklem v. Blake*, 22 Wis. 495; •*Smith v. Hughes*, 50 Wis. 620; *Reynolds v. Vilas*, 8 Wis. 471; *Hannan v. Oxley*, 23 Wis. 519, 522, 523; *Staats v. Ten Eyck*, 3 Caines, 111; *Leland v. Stone*, 10 Mass. 463.

The general rule adopted by this court to find the price paid by the grantee for the part to which the title fails and so fix his damages, is based wholly upon the presumption that the parties purchased the entire tract with the knowledge of, and in contemplation of, the fact that one part of the land purchased was of more value than another part. A party buys an improved farm, with buildings, orchard, garden, cultivated fields, woodlands, and perhaps barren hills. In such case, if the title fails to a part of the farm conveyed, the general rule of the cases would more

certainly determine the amount of the purchase price of the part to which the title had failed than any other. So, if a party buys a large tract of unimproved land, both the buyer and seller take into account that some parts of the tract in its natural state are likely to be of more value than other parts. That matter is in the contemplation of both parties to the agreement, and in such case the general rule fixes the price paid for the part to which the title fails more certainly and more equitably than any other general rule. But in a case like the one at bar, when it turns out that the tract to which the title fails is of more value than any of the other parts of the tract purchased, not on account of anything in the contemplation of the seller or purchaser but by reason of facts of which neither had knowledge at the time and which the purchaser did not take into consideration when purchasing or in fixing the price he was willing to pay, the general rule wholly fails to determine the question as to what the plaintiff paid for that tract. By what rule of logic can you prove that the purchaser paid for the tract the value which it turns out to have by reason of the improvements thereon, when he says he did not buy it with the view to its value on account of any improvements thereon, but with the express understanding that it was unimproved? It seems to me, in such case, the general rule fails; and the actual comparative value of the tract depending upon matters not known to the parties at the time, and which both say were not taken into consideration at the time of the sale, cannot now be taken into consideration in an endeavor to fix the price paid for such tract. If the majority of this court has made a mistake in this case, it is in holding that the general rule of this and other courts is an arbitrary and universal rule as to the measure of damages, and not a rule simply established for the purpose of determining a fact upon which the judgment for damages must be based, viz., What did the grantee pay for

the tract to which the title fails? All, I think, must agree that the rule that the grantee is limited to the purchase price paid, must apply as well to the case of the failure of the title to a part of the tract as when the title to the whole fails. And the general rule of the cases is adopted as the most equitable in ascertaining that fact in ordinary cases, and so is stated as the rule for assessing the grantee's damages; but, properly speaking, it is a rule for ascertaining the price paid by the grantee for the tract to which the title has failed, and so necessarily fixes the amount of his damages.

That the rule cannot be the true rule in all cases for determining what the grantee paid for the tract to which the title failed, let us suppose a few cases which might well arise in this country. A. supposes he owns two vacant lots in a city, of equal or nearly equal value. In the belief that he owns both, he conveys them by warranty deed to a purchaser for a gross sum of $2,000, who buys them as vacant and unimproved lots, neither party knowing or believing that either has any improvements thereon. It turns out that the title to one of the lots fails, and that on such lot there is a fine building worth $8,000, eight times the value of the lot. Now, in an action in which it becomes necessary to determine what the grantee paid for that lot, is it possible that the $8,000 house should be considered at all? To my mind it is clear that it could have no kind of probative power in determining that question, and cannot, therefore, furnish any basis upon which to compute his damages. Suppose, again, that in a case of a sale of the two lots the title fails as to an undivided nine-tenths of both lots. In that case it is clear that the grantee can recover only $1,800, or nine tenths of the purchase price, and interest, and will only have one tenth of the lots purchased left, or one fifth of one lot; and in the other case, under the general rule applied as in the case at bar, he will recover $1,800 and interest, and have one half

of the property purchased left, or one whole lot. Suppose, again, A. sells to B. an improved farm. It is bought and sold as a farm for farming purposes, and not with any view on the part of the purchaser that it contained a mine of any kind, and it turned out that a barren hill on one end of the farm contained a very valuable mine of iron, coal, or other mineral, and the title to the hill fails. Can it be fairly argued that, in an action to determine what the plaintiff actually paid for the hill, the fact that there was a mine in it when he bought it can in any way tend to prove such fact? I think not. The mine might make the hill, the value of which as a part of the farm, for farming purposes, was merely nominal, ten or a hundred times more valuable than all the rest of the farm together. Would it not be an absurdity to say that the purchaser, when he bought the farm, paid as the purchase price for that part of it ten or one hundred times as much as he did for all the rest of the farm? The mere statement of the case is sufficient to show the fallacy of such claim. If, however, the purchaser had reason to think or believe there was a mine in the hill when he bought the farm, and bought it in contemplation of that supposed fact, and there was in fact a mine in such hill, and the title failed as to it, the general rule might well be applied, especially if the seller knew of the object of the purchaser in making the purchase, because it might fairly be said that he paid his money, or the greater part of it, on the strength of his belief in the existence of the mine. So, in the case at bar, the plaintiff says he bought the tract with the belief that there might be an iron mine on it. Had there been such a mine on the forty acres to which the title failed, he might well insist that the general rule should apply, and that, in determining what he paid for this forty acres as compared with the other tracts, the value of the mine should be considered.

Irrespective of any ulterior consequences, were the issue

submitted to a court or jury to find what sum the plaintiff paid for the forty acres of land upon the evidence in this case, is it possible that the court or jury would find that he paid $952.75? I think it very nearly absurd to suppose such could be the verdict, and yet it seems to me such is the effect of the decision made in this case, or else the court must be of the opinion that the damages of the plaintiff are not limited by the price he in fact paid for the land.

I cannot see that there is any force in the objection that this evidence, which has a strong tendency to prove the fact of the price paid, is in violation of the rule that parol evidence is not admissible to contradict the deed. This rule would undoubtedly apply if the defendants were seeking to recover of the plaintiff the value of the improvements on this forty acres, supposing the title had passed to the plaintiff under the deed. In such case the deed would be conclusive upon the grantor that he intended to convey whatever was a part of the real estate described in the deed; and, if there had been any mistake or fraud, he could get relief only in equity. But in the case at bar the evidence is not offered for any such purpose. It is offered to prove what was the real consideration paid by the plaintiff for this particular tract, and it is just as admissible as though offered to show what he had paid for the entire tract. Such evidence has always been held admissible by this court in actions of this kind. To me it does not seem consistent that when a plaintiff brings his action to recover for a breach of the covenant of seizin, when the breach extends to all the land conveyed in the deed either party may show by parol what the real consideration was, irrespective of the deed; but, when he brings his action to recover for a breach as to a fraction of the tract, no proof can be given to show what he paid for that fraction of the tract, and that nothing will show the fact except an arbitrary rule that he must in all such cases be conclusively deemed

to have paid such part of the entire purchase money as the actual value of such part of the tract bears to the actual value of the whole tract. It is the settled law of this state, as of most of -the states in the Union, that the damages under the covenant of seizin are limited by the consideration money paid, the interest, and sometimes the costs of the suit by which the plaintiff was evicted. See *Caulkins v. Harris*, 9 Johns. 325; *Staats v. Ten Eyck's Ex'rs*, 3 Caines, 111; *Pitcher v. Livingston*, 4 Johns. 1; *Bender v. Fromberger*, 4 Dall. 441, 442; *Marston v. Hobbs*, 2 Mass. 433; *Gore v. Brazier*, 3 Mass. 543; *Lowther v. Comm.* 1 Hen. & M. 202; *Nelson v. Matthews*, 2 Hen. & M. 164; and the cases cited from this court above.

The same rule is adopted when the title to a part fails. This was expressly held in *Staats v. Ten Eyck's Ex'rs, supra.* In that case, Ten Eyck had conveyed two lots for the gross sum of £700, stated in the deed. The title failed to the undivided half of one of the lots, and on the trial it was shown that Staats received £300 as the consideration for the lot as to which the title to one half failed, and the plaintiff was limited to a recovery of £150 and interest. In that case, KENT, C. J., states the rule as laid down by Sir William Jones as follows: "On a sale declared void by the court for want of ownership, the seller is to pay the price to the buyer; and what price? Is it the price actually received, or the present value of the thing? The answer is, the price for which it was sold,— the price agreed on at the time for which it was sold, the price agreed on at the time of the sale and received by the seller,— and this price shall be recovered although the value may have been diminished." There is no question that the rule above stated should be applied when the title to a part of the conveyed premises fails; and the only difficulty is in determining what was in fact paid for such part. And when it is evident that the general rule — that the comparative value of that part —

does not show this fact, we must resort to other evidence to establish it. That the general rule utterly fails when such comparative value depends upon matters which were not contemplated or taken into consideration at the time of the sale by either party to the contract in fixing the amount to be paid, is to me very evident. As was said by the learned counsel for the defendants on the hearing, the authorities bearing upon this exact point are not numerous, but those that are found are very clear. Among the very earliest cases in England it was held that when the title failed the rule was to return the value of the land at the time of the sale; and it was held that the fact that after the sale was made a mine had been discovered on the land, could not be taken into consideration in determining that value. It is evident that this rule was established for the reason that the undiscovered mine was not taken into consideration by the parties at the time of the sale in fixing such value. 22 Vin. Abr. tit. "VOUCHER," T, *b*, p. 145; *Gore v. Brazier*, 3 Mass. 543; *Leland v. Stone*, 10 Mass. 459, 463.

I see no necessity for compelling a defendant to seek relief in a court of equity when the title has failed to a part of the premises conveyed, in a case of this kind. Take the case of the supposed sale of the two city lots for the $2,000, sold as vacant lots. The title falls to one, which unexpectedly has an $8,000 house on it. Is there any difficulty in ascertaining what the grantor paid for that lot when he purchased it? To my mind there is no difficulty. It is a mere inquiry as to a fact easily ascertained by the circumstances attending the purchase. And neither the statute law nor any law based upon the decisions of this court or any other court has made it unlawful to ascertain that fact in an action at law. If it is to be held that the price paid by the grantee for the part to which the title fails is not to limit his damages in such case, but that he must in all such cases recover as his damages the comparative value of such

part, irrespective of what he paid for the same, then, perhaps, it might be necessary for the defendant, in an action brought to recover damages for the failure of title to a part of the premises conveyed for a gross sum, to set out the fact in his answer which would show that equitably such rule ought not to apply in that particlar case.

It is also objected that if, in order to fix the price which the grantee paid for the part to which the title has failed, evidence can be given for the purpose of showing what was in the contemplation of the parties when the sale and purchase were made, great uncertainty will arise as to what the measure of damages shall be in such cases. This objection ought not to prevail if it be admitted that the price paid is to limit the damages. There is no more difficulty in fixing the price paid in such cases than in hundreds of other cases where the establishment of a material fact depends upon parol testimony and the recollection of witnesses as to the facts pertinent to the issue.

In my opinion, the plaintiff ought to be limited in his recovery to the sum of $120, and the interest, that being the comparative value of the land exclusive of the improvements thereon.