LARSON, Respondent, vs. COOK, imp., Appellant.

*May 25 — June 21, 1893.*

(1) *Action by person for whose benefit contract was made.* (2, 3) *Sales of standing timber: Agreement as to time for removal: Partial failure of title: Damages.*

1. Where a contract was made nominally with one person but was understood by all parties to be for the benefit of another, the former having an interest therein only by way of security for advances made thereon to the latter, the latter may maintain an action for a breach of the contract.

2. The owners of timber standing on lands not owned by them sold such timber by a contract which provided: "Said timber to be removed in the years 1882 and 1883; more time to be allowed . . . if more time is allowed" the vendors. *Held,* that this was an express agreement by the vendors that the purchasers should have the whole of the years 1882 and 1883 in which to remove the timber.

3. The purchasers having lost a part of the timber by reason of the fact that the vendors had no right to remove it after April 23, 1883, the measure of damages is such fractional part of the whole consideration paid as the value, at the time of the purchase, of the part to which the title failed bears to the value of all the timber purchased, and interest during the time they were deprived of such part, not exceeding six years.

APPEAL from the Circuit Court for *Barron* County.

Action for damages for breach of contract. Plaintiff is the assignee of the cause of action, from one L. O. Larson,

for value. In February, 1882, the defendants, *Cook* and Huntington, owned the right to cut and remove for their own use all the timber upon certain tracts of land, provided they cut and removed the same by the 23d of April, 1883, but did not own the land nor had they any right to enter thereon after said last-named date. On February 2, 1882, L. O. Larson negotiated with *Cook* and Huntington for the purchase of said timber; they representing that they had the right to cut and remove said timber during the whole of the years 1882 and 1883, and Larson relying on such representation and not knowing to the contrary. The negotiations resulted in the purchase of the timber by Larson for the agreed price of $2,000; but Larson, not being able to pay the purchase price, procured one Gribben to give his note therefor, which he did, and the following written contract was made and signed by *Cook* and Huntington: " In consideration of the sum of $2,000 paid by three months' note to *S. G. Cook,* we hereby transfer and sell to J. P. Gribben all the standing and down pine now being on [here follows a description of the lands]; said timber to be removed in the years 1882 and 1883; more time to be allowed in removing timber if more time is allowed to *Cook* and Huntington." Thereafter, Larson entered on the land, cut timber and manufactured the same into shingles. He paid Gribben for his advances prior to April 23, 1883, in shingles manufactured from the timber, and did not know, up to that time, that *Cook* and Huntington's right expired on that date. On said 23d day of April, 1883, 218,169 feet of timber remained standing and uncut on said land. It does not directly appear how much timber was on the land at the time of Larson's purchase, but he testified that the timber was bought at the rate of $3 per thousand feet. May 1, 1883, Larson and Gribben had an accounting, and it was found that Gribben had been fully paid for his advances; and at that time Gribben indorsed on the contract,

for the purpose of passing his rights thereunder to Larson, the following assignment, and delivered it to Larson: "I hereby assign to L. O. Larson all my right, title, and interest to and in the within-described timber. J. P. Gribben." In December, 1883, Larson cut and skidded 70,000 feet of the remaining timber, and had time prior to January 1, 1884, to cut and remove it all, but was prevented by the owner of the land, on the 13th day of December, 1883, from removing any more timber, and said owner recovered said 70,000 feet of skidded logs from Larson in a replevin action. The value of the standing timber remaining was $4 per 1,000, and of the skidded logs, $5.25 per 1,000.

The above facts, with others not necessary to mention, appeared from the evidence introduced by plaintiff. The defendant Cook, who appeared and answered separately, moved that a verdict for defendants be directed, which being overruled, he offered no evidence; and thereupon the parties stipulated to waive the jury, and the case was submitted to the court to make findings of fact and conclusions of law upon the evidence already introduced. The circuit judge made findings of fact substantially as above recited, and concluded that the clause in the contract providing that the timber was to be removed in the years 1882 and 1883, and that more time was to be allowed in case more time was allowed to Cook and Huntington, should be construed as an express agreement on the part of defendants that the purchaser should have the years 1882 and 1883 within which to cut and remove the timber, and that the same formed a substantial part of the consideration for the purchase; that Larson lost, without fault on his part, 218,169 feet of timber, by reason of the fact that defendants had no right to remove timber after April 23, 1883; that the facts established are sufficient to constitute a cause of action in plaintiff for breach of defendants' said agreement; that the property conveyed, being stand-

ing timber, was an interest in land; that the damages must be governed by the law applicable to breaches of covenant without fraud; and that the measure of damages is such part of the whole consideration paid as the timber lost formed of the whole amount purchased, with interest. Judgment was ordered and rendered for plaintiff for $654.36, with interest, from which defendant *Cook* appeals.

For the appellant there was a brief by *Jenkins & Jenkins*, and oral argument by *John J. Jenkins.* They contended, *inter alia*, that when a contract is made for the benefit of the two contracting parties, a third person cannot enforce any rights under it. If the third person is not named in the contract and is a stranger to the consideration, he must show that the contract was made for his sole benefit and that he was the party intended. The mere fact that he will be benefited is not sufficient. *Lorillard v. Clyde*, 122 N. Y. 498, 501; *Durnherr v. Rau*, 135 id. 219; *Grant v. Diebold S. & L. Co.* 77 Wis. 72; *Lake Ontario S. R. Co. v. Curtiss*, 80 N. Y. 219; *Simson v. Brown*, 68 id. 361, 362; *Lawrence v. Fox*, 20 id. 268; *Pardee v. Treat*, 82 id. 385; *Davis v. Clinton W. W. Co.* 54 Iowa, 59; *National Bank v. Grand Lodge*, 98 U. S. 123; *Austin v. Seligman*, 18 Fed. Rep. 519; *Wright v. Terry*, 23 Fla. 160; *Grim v. Thomas Iron Co.* 114 Pa. St. 611; *Burton v. Larkin*, 36 Kan. 246; *Blymire v. Boistle*, 6 Watts, 182, 31 Am. Dec. 458; *Greenwood v. Sheldon*, 31 Minn. 254.

*James Wickham*, for the respondent.

WINSLOW, J. We entirely agree with the conclusion of the circuit judge that L. O. Larson acquired rights under this contract which he could enforce by action. It is settled in this state that "when one person, for a valuable consideration, engages with another (whether by simple contract or by covenant under seal) to do some act for the benefit of a third person, the latter may maintain an ac-

Larson vs. Cook.

tion against the promisor for breach of the engagement."
*Grant v. Diebold S. & L. Co.* 77 Wis. 72, and cases there
cited. In the present case *Cook* and Huntington contracted
nominally with Gribben for the benefit of Larson. True,
Gribben had an incidental interest in the contract to the
extent of his advances, but no further. The contract was
made and understood by all parties to be made for the
primary benefit of Larson, and the fact of Gribben's inter-
est by way of security only can make no difference. Under
the rule above quoted there can be no doubt of Larson's
right to maintain an action for breach of this contract.

We also fully agree with the circuit judge in his construc-
tion of that clause of the contract providing for removal of
the timber. The clause under consideration is: " Said tim-
ber to be removed in the years 1882 and 1883; more time
to be allowed in removing timber, if more time is allowed
*Cook* and Huntington." Plainly, this is not a provision
for the benefit of *Cook* and Huntington. It could make
little, if any, difference to them when the timber was re-
moved, because they did not own the real estate. Whether
the timber was ever removed, so long as they received their
pay therefor, would seem to be a matter of no moment to
them. On the contrary, it obviously was a matter of great
importance to Gribben and Larson that they should have
a sufficient time to remove the timber which they had
bought, and that they should know positively what time
they were to have; and the last clause, providing for the
*allowance* of more time, is entirely conclusive to our minds
that, by the previous clause, *Cook* and Huntington are *al-
lowing* time to Gribben and Larson. Indeed, it is difficult
to see how the whole clause can be construed in any rea-
sonable way, except as an express agreement by *Cook* and
Huntington that Gribben and Larson are to have the whole
of the years 1882 and 1883 within which to remove the
timber; and we so construe it.

Larson vs. Cook.

This agreement having been confessedly broken, no further question remains, except the question of the measure of damages.

A contract for the sale of standing timber is a contract for the sale of an interest in lands. *Lillie v. Dunbar*, 62 Wis. 198. Title to a part of the lands failed. The rule of damages laid down in *Semple v. Whorton*, 68 Wis. 626, applies. Under that rule the damages are such fractional part of the whole consideration paid as the value, at the time of the purchase, of the part to which the title fails bears to the value of the whole piece purchased, and interest during the time plaintiff has been deprived of the use of the fractional part, not exceeding six years. To state it under the form of the rule of three, the proposition is: The value of the whole at the time of the purchase is to the value at the same time of the part to which title fails as the whole consideration is to $X$, or the damages. It is plain that in order to find the unknown element in the problem, i. e. the amount of the damages, we must know from the evidence the other three elements of the problem. Here is the difficulty. The evidence fails to show the value at the time of the purchase of the part to which title failed, and there is no evidence of the value of the whole at the time of the purchase, save the fact that $2,000 was paid for it. Granting that this may be sufficient, *prima facie*, in the absence of other evidence, to warrant a finding that the value of the whole was $2,000, we are still entirely without the means of determining the value of the part to which title failed at the time of the purchase. There must be further proof before an assessment of damages can be made in accordance with the rule settled in this court. No new trial upon the merits will be necessary, but further evidence upon the question of damages, in accordance with the rule laid down, must be taken, and for this purpose a reversal is necessary.

*By the Court.*— Judgment reversed, and cause remanded for further proceedings in accordance with the opinion.